## No. 8114.

### BOOTH v. FITZER.

PROMISSORY NOTE.—*Failure of Consideration.*—*Demand.*—Where a note is given solely for copies of certain secret recipes and chemical formula, with instructions in their use, to be furnished by the payee, and the latter fails to furnish the copies or give the instructions, the maker being ready to receive them, a demand for them is unnecessary, and there is a failure of consideration of the note.

DEMAND.—A demand is not necessary where it is shown that it would be unavailing.

From the Cass Circuit Court.

*D. C. Justice* and *D. B. McConnell,* for appellant.

*D. P. Baldwin* and *D. D. Dykeman,* for appellee.

NIBLACK, J.—Suit by John Fitzer, against Jasper N. Booth, upon a promissory note for the sum of $250, dated May 1st, 1876, and payable ten months thereafter, with ten per cent. interest from date.

The action was commenced before the city judge of Logansport, and afterwards appealed to the Cass Circuit Court, where there was a verdict and judgment for the plaintiff for the amount of the note, with interest.

The defence relied upon at the trial was a failure of the consideration for which the note was given, and the alleged disregard by the jury of the evidence introduced to sustain that defence raises the only question presented for our decision.

The defendant testified in his own behalf, and the material portions of his testimony were to the effect that the note in suit was given for one-fourth of a half interest in certain receipts, formulas and trade-marks used in the Musser Chemical Works at Logansport, for the manufacture of baking powder, and flavoring extracts and perfumes; that one Ò. S. Musser, the original owner of such receipts, formulas and trade-marks, came to Logansport from Lafayette with a man by the name of Hurley; that these two persons, together with the plain-

tiff and defendant, and one Morris, established the chemical works above named; that shortly afterwards Hurley sold out his interest to one Ijams; that Musser claimed to own the receipts, formulas and trade-marks as a secret within his own knowledge, and put their use into the chemical works as a part of the capital, valued at $3,000, and the other parties in the business put in $5,000; that Musser used the receipts and formulas in the business of the chemical works from the time of their establishment, in March 1876, he alone doing all the mixing and preparation of the chemicals, and continuing to hold the secret of their mixture and preparation within his own knowledge; that about the 1st of May, 1876, the plaintiff claimed to have purchased of Musser one-half interest in the receipts and formulas, including the knowledge of how to use them, for the sum of $1,000; that afterwards, at the solicitation of the plaintiff, and of Morris, one of the other partners, he purchased of the plaintiff one-fourth of his half interest in the formulas and receipts for $250, for which he, the defendant, executed the note in suit; that the defendant was for this note to receive copies of the receipts and formulas, with the knowledge of how to use them in business; that afterwards the defendant sold his interest in the business to one Forest, who took his place in the firm; that the plaintiff never furnished the defendant with the receipts and formulas, or with copies of them, or with any knowledge of how to use them, nor did any one else do so; that the defendant had never received anything for the note; that the sole and only consideration for which the note was given was that the defendant was to receive the receipts and formulas from the plaintiff; that the firm then had, and continued afterwards to have, the use of the receipts and formulas in its business; that it was with the consent of the plaintiff that Forest purchased all the interest of the defendant in the business and took his place in the firm; that the defendant took from Forest a written obligation indemnifying him against all claims of the plain-

tiff, including the note in controversy, and against all loss on account of the chemical works.

Forest testified that after he had purchased the interest of the defendant in the chemical works, and about the time the note in judgment was coming due, he went to the plaintiff with one Runnells, who had purchased a similar interest in the ownership and business of the chemical works, to get copies of the receipts and formulas; that Runnells, on behalf of himself and the said Forest, explained to the plaintiff the purpose for which they had come to see him; that the plaintiff thereupon, with apparent reluctance, however, took the book containing copies of the receipts and formulas from his pocket and was about to give it to the said Runnells and Forest when Musser, who was present, stepped up to him and said, substantially, "Fitzer, at the time I sold these receipts and formulas to you, you took an oath not to reveal the secret they contain to any one else, and now you are about to break your contract with me;" that Musser then took the book out of the plaintiff's hands and put it into his own pocket; that after this the plaintiff refused to deliver up copies of the receipts and formulas and that so far as Forest, the witness, was concerned, he had never received copies of those documents, or any knowledge of the information they contained, from the plaintiff or any one else.

Runnells corroborated Forest as to the demand upon the plaintiff for copies of the receipts and formulas, and as to the circumstances under which the plaintiff refused to comply with the demand. He also testified as to his inability to get copies of the receipts and formulas, or any information as to what they contained.

The plaintiff denied that Forest and Runnells had made a demand upon him for copies of the receipts and formulas, as they claimed to have done; but admitted that he had never furnished the defendant with such copies, and that he had, as a part of his contract with Musser, taken an oath not to divulge to any one else the information embraced in the receipts and

formulas, insisting only that he had reserved an exception in favor of his partner, or successor in business. He did not claim that he had been ready, or had ever been at liberty, to deliver copies of the receipts and formulas to the defendant, or to Forest, as his vendee. Nor did he deny that Musser had prevented him from delivering such copies to Runnells and Forest, and that there was a question as to his right to sell and make public the information contained in the receipts and formulas.

On being recalled, the defendant stated that he had never heard anything about the plaintiff having taken an oath not to reveal the knowledge which the receipts and formulas would impart, nor any question as to the plaintiff's right to sell an interest in these receipts and formulas, until after Runnells and Forest tried to get copies of them, as above testified to by the said Runnells and Forest.

Except upon the single point of a formal demand upon the plaintiff by Runnells and Forest for copies of the receipts and formulas, we have not been able to observe any palpable conflict in the evidence.

If the plaintiff's right to sell an interest in the receipts and formulas had been unquestioned, proof of a demand for copies would perhaps have been necessary to a complete establishment of the defence set up against the note; but the evidence appears to us to have shown a condition of affairs which would have rendered a demand unavailing, and it is a familiar rule that where such a condition of affairs is shown, proof of a demand is unnecessary.

The plaintiff claimed only the right to dispose of an interest in the receipts and formulas, either to his partner or successor in business, and this right was denied by Musser, the original owner, and seemingly not insisted upon by the plaintiff over the objection of Musser. Consequently, the inquiry as to whether Forest made a demand upon the plaintiff for copies of the receipts and formulas involved a question not material to the merits of the cause as it went to the jury, and concern-

ing the evidence upon which we need not express any opinion here.

We have no brief from the appellee, and hence no suggestion from him as to any theory upon which the proceedings below can be sustained.

We think the defence set up by the appellant was fairly sustained by the evidence, and that the court below erred in holding otherwise, when ruling upon the sufficiency of the evidence to sustain the verdict.

The judgment is reversed, with costs, and the cause remanded for a new trial.

## On Petition for a Rehearing.

ELLIOTT, J.—We have again given the evidence in the record a careful examination. As we view it, there is absolutely no conflict upon the question as to what constituted the consideration of the promissory note upon which the appellee's complaint is based. All the evidence supports the contention of the appellant that the consideration was that he should receive a knowledge of the manner in which certain chemical preparations were compounded. The evidence is equally conclusive that he never did receive this knowledge.

Parties have a right to fix the consideration of their contract, and if there is an entire failure or want of consideration, no recovery can be had upon the contract. In this case, the agreed consideration was the revelation to the appellant of Musser's secret of preparing the chemical compounds manufactured by the Musser Chemical Works. This consideration the maker of the note never received, and no action can, therefore, be maintained by the payee.

It makes no difference that the note was given for another's interest, provided the consideration was the payee's promise to impart the secret of preparing the chemical compounds.

There is one point upon which there is a conflict, although upon that the preponderance is strongly with the appellant. The appellee swears that there was no demand for the formu-

las, while all the other witnesses swear that there was; but strong as this preponderance is, we should be compelled to decline to interfere if it were essential to the defence that a demand should be proved. We have no disposition to trench upon the rule that this court will not reverse upon the ground that the verdict is contrary to the evidence, if there is any evidence sustaining the verdict.

We think no demand was necessary. It is a familiar rule that where it plainly appears that a demand would be unavailing, or where a party by his acts waives a demand, none need be shown. The evidence in this case shows that a demand would have been unavailing.

But the case is one in which no demand is necessary, whether it would have been unavailing or not. The consideration of the note was the communication of the secret of making the chemical preparations received by Fitzer from Musser. The payee was as much bound to impart this knowledge as the merchant to deliver goods for which he has received his customer's note. With quite as much propriety might a master, who has received from his pupil a note for teaching him some branch of mechanics, recover upon it without having rendered the stipulated services. We do not, of course, mean to say that the payee of a note is in the first instance bound to prove consideration; nor do we mean to say that if the maker had done some act rendering it impossible for the payee to render the agreed consideration, the latter would not be entitled to recover. Neither of these questions is before us. We have in hand a case where the payee of the note was bound to teach the maker a certain mystery, and where the mystery was not taught and no excuse shown for not teaching it. The evidence shows that the maker of the note was ready and willing to receive the information bargained for; that the payee knew this; and showing this it shows a case where no formal demand was necessary.

Petition overruled.