Filed June 8, 1892.

---

No. 280.

## THE OHIO AND MISSISSIPPI RAILWAY COMPANY *v.* SMITH.

ATTORNEY AND CLIENT.—*Railroad.—Action Against for Legal Services.— Annual Pass.— When not Compensation.*—Where the plaintiff, an attorney, rendered legal services for the defendant railway corporation during a certain year, he is entitled to recover for the value of the same, notwithstanding the fact that during said period the defendant company carried the plaintiff on its said railroad free of charge on an annual pass issued to him by the receiver of the company.

SAME.—Where a railroad company sent the plaintiff an annual pass as compensation for the legal services he might render the company in his county during "the current year" (1885), and the pass was accepted upon the terms stated, the plaintiff may, nevertheless, recover for the value of his services in a case in which he was employed by the general counsel of the company, who stated to him that the case was a very important one, and that while the company could not pay large fees it ought to pay plaintiff a reasonable fee for defending the suit, to which plaintiff replied that he would help to defend the case and would leave the matter of his compensation to his colleague in the case and to the general counsel of the company, and the general counsel replied that there would be no trouble about that, and for him to go ahead and hunt up the evidence, etc.

SAME.—The plaintiff accepted a pass from defendant company for the year 1886 upon the same terms as those set forth in the preceding paragraph. In the latter part of the year he notified B., who was in the employ of the general counsel of the company, and intrusted with the matter of the employment of counsel for the company in the various counties of Indiana, that he would not do any more work for the company for a free pass, and B. remarked that the new management proposed to pay attorneys for the work they did. In January of 1887 the plaintiff wrote to the general counsel of the company that if they desired to retain his services to please renew his pass. In reply they sent him a pass, stating that it was to compensate him for such incidental work

The Ohio and Mississippi Railway Company *v.* Smith.

as he might be called upon to render for the company that year, and that for work requiring greater labor they would make such allowance as they deemed reasonable. The pass was accepted and used by the plaintiff.

*Held,* that the services of the plaintiff in certain litigated cases in the latter part of 1886, and during the year 1887, were not compensated for by the pass issued to him during these years by the company.

SAME.—*Demand Before Action.— When Unnecessary.* — Where the general counsel of the company were to make such allowance for the legal services of the plaintiff in the year 1887 as they might deem reasonable, but the company for more than a year before the bringing of the suit disclaimed all liability to the plaintiff on account of such services, it was not necessary that the plaintiff should make a demand on the general counsel for an allowance for his services before instituting his action.

PRACTICE.—*Bill of Exceptions.— When Evidence not Properly Certified.—Appeal.*—Where a judge fails to certify in a bill of exceptions that " this was all the evidence given in the cause," no question is presented on appeal which depends for its determination upon the evidence introduced in the cause.

From the Jennings Circuit Court.

*W. M. Ramsey, L. Maxwell, R. Ramsey* and *G. F. Lawrence,* for appellant.

*J. Overmeyer* and *F. E. Little,* for appellee.

ROBINSON, C. J.—This action was commenced by the appellee against the appellant. The complaint, among other things, was as follows :

" Plaintiff alleges that the defendant is indebted to him in the sum of $725, on account for services rendered by him as the attorney for defendant, for and at the instance of the said defendant, which services were reasonably worth the sum of $725, a bill of particulars of which is filed herewith, and made a part hereof. That said sum is due and unpaid, wherefore plaintiff demands judgment for $725, and other and proper relief."

To this complaint was appended a bill of particulars showing the items of the services mentioned by cases, commencing in October, 1883, and ending in May, 1887, showing specifically each case for which services were claimed to

have been rendered, and that the amount sued for was wholly for services performed in litigated cases. The appellant answered in four paragraphs.

" 1.  General denial.

" 2.  Payment.

" 3.  An allegation that the services of plaintiff were rendered under special agreements made at the beginning of each year, whereby he received and accepted passes over defendant's road, as full compensation.

" 4.  Set-off."

A demurrer was sustained to the fourth paragraph of the answer, and as no question is raised in this court on the ruling of the court on the demurrer to this answer, it need not be further noticed.

The appellee replied—

" 1.  By general denial.

" 2.  The plaintiff, for further reply to the third paragraph of answer, says that at other and different times after the execution of the pass contracts mentioned in said third paragraph of answer, the defendant specially contracted with plaintiff for the performance of the services sued for in the complaint, and agreed to pay plaintiff a reasonable compensation for the same, and agreeably to the last mentioned contracts plaintiff performed the services sued for, and that none of said services were performed under the 'pass' contracts mentioned in said third paragraph of answer."

Under the issue thus formed the cause was submitted to the court for trial, and the court, at the request of the appellant, made a special finding of facts, and stated its conclusion of law thereon.  As conclusions of law under the facts found, the court found in favor of the appellant as to a part of said services so claimed to have been rendered by the appellee and in favor of the appellee as to a part, and that there was due appellee on account of said services so rendered by him the sum of four hundred and seventy-five dollars, for which sum judgment was rendered in favor of the appellee

The Ohio and Mississippi Railway Company *v.* Smith.

against the appellant upon the conclusions of law under the facts found, to which appellant saved exceptions. Before looking to the questions raised by the assignment of errors, we will determine the point made by the appellee that the evidence is not in the record, and that, as the evidence is not in the record, we can not consider any question in the case which depends upon the evidence for its determination. There appears in the record what purports to be a bill of exceptions containing the evidence given in the cause. This bill of exceptions, which attempts to incorporate the evidence in the record, concludes with the words, "Plaintiff rests, defendant rests," then follows the certificate and signature of the judge, but the judge fails to certify that "this was all the evidence given in the cause." In fact this essential and necessary statement, or words equivalent thereto, to make the evidence a part of the record does not appear in the certificate of the judge or anywhere in the record. That the record does not contain the evidence is so firmly settled as not to require the citation of authority. We can not, therefore, consider any question in the case that depends upon the evidence for its determination. The evidence not being in the record, this leaves for our consideration and decision of the alleged errors discussed by counsel for appellant only the alleged error of the court in its conclusions of law upon the special findings of fact.

The first conclusion of law upon the facts found in findings Nos. 4, 6 and 7 was in favor of the appellant, and that there was nothing due the appellee from appellant. For the services performed as found in said findings there is no contention as to this conclusion of law upon the facts found.

The contention of the appellant is that the court erred in its second conclusion of law; in finding as a conclusion of law that there was due from the appellant to the appellee the sum of four hundred and seventy-five dollars for services performed found in finding $4\frac{1}{2}$, 8, 12 and 13, and that the appellee was entitled, and ought to recover in this action

from the appellant, said sum of four hundred and seventy-five dollars.

Although the special finding of facts is quite lengthy, the contention of the appellant can not perhaps be fairly considered without setting them out in full. The facts so found are as follows :

"1.  The plaintiff, Alonzo G. Smith, is, and for 20 years last past has been, an attorney at law, practicing his profession in the courts of Jennings county, Indiana.

"2.  The defendant, the Ohio & Mississippi Railway Company, is a corporation owning a railroad passing through said county, which said road said company has operated since the 30th day of June, 1875, to the commencement of this suit, except from the 31st day of December, 1876, to the first day of April, 1884, during which latter period said railroad was operated by a receiver appointed by the Federal courts, and all the property of said defendant was in the hands of and managed by said receiver during that time.

"3.  Charles A. Beecher was the general counsel of the defendant from June 31st, 1875, to November 1st, 1885, when he was succeeded as such general counsel by the law firm of Ramsey, Maxwell & Matthews, who were continued as such counsel to January, 1888.   Percy Werner, Esq., was assistant general counsel of said defendant from the first day of January, 1880, to the first day of August, 1886, and Edward Barton from the first day of December, 1886, to the first day of January, 1888, was in the employment of the general counsel of the defendant as assistant counsel, and as such transacted business for the defendant.   From the 31st day of June, 1875, to the commencement of this suit, it was the duty and business of the general counsel of the defendant and of the assistant general counsel, as such counsel, to take charge of and direct and control the legal department of defendant's business, and to employ local counsel for the defendant in Jennings and other counties in the State of Indiana to attend to its business, and conduct its litigation in

said counties. Said Charles A. Beecher was also the general counsel of the said receiver while in charge of the property of the defendant, from the 31st day of December, 1876, to the first day of April, 1884, and it was his duty and business as such general counsel for the receiver to look after and take charge of the legal department of said railroad, and to employ local counsel for said receiver.

" 4. In the year 1883, at the request of said Charles A. Beecher, as general counsel for said receiver, the plaintiff as an attorney prosecuted in the circuit court of Jennings county, one Richard Class, and one James Court, for a larceny of the goods of said receiver, procuring their indictment and conviction. The services thus performed by the plaintiff were reasonably worth twenty-five dollars.

" $4\frac{1}{2}$. From the 1st day of April, 1884, to the 31st day of December, 1884, the plaintiff, at the request of the defendant, by its general counsel, performed services for said defendant as its attorney in the circuit court of Jennings county, Ind., in the cases of Albert J. Richards *vs.* The Ohio and Mississippi Railway Co., and Docia Lewis *vs.* The Ohio and Mississippi Railway Co., upon an implied promise on the part of the defendant to pay plaintiff what said services were reasonable worth. Said services, so performed by the plaintiff, were reasonably worth a fee of twenty-five dollars in each of said cases. Said services have never been paid for, and said fees are due. During said period said defendant carried the plaintiff on its said railroad free of charge, on a pass issued to said plaintiff on the 1st day of January, 1884, by said receiver.

" 5. On the 1st day of January, 1885, the plaintiff and the defendant, by its general counsel, entered into an agreement in writing, as follows :

" ' Legal Department, Ohio and Mississippi Railway Co.

" ' C. A. Beecher, *General Solicitor*.

" ' CINCINNATI, January 1st, 1885.

" ' DEAR SIR—As compensation for the legal services you

may render the company in your county for the current year, I send you herewith our annual pass, good until December 31st, 1885.    Please acknowledge its receipt.

"' Yours truly,

"' C. A. BEECHER, *P. W.*

"' *To Hon. A. G. Smith, N. Vernon, Ind.*

"' I accept the annual pass upon the terms above stated.

"'A. G. SMITH.'

" 6. During the year 1885, and while said contract in finding 5, above, was in force, the plaintiff was directed by the general counsel of the department (defendant) to prosecute one Henry Feadler, by securing his indictment in the circuit court of Jennings county, for the crime of oppressive garnishment in garnishing the wages of some of defendant's employees, and in accordance with the request, and under the directions of the defendant's general counsel, the plaintiff, as defendant's attorney, procured the indictment of said Feadler, for the crime of oppressive garnishment by the grand jury of said county, and in the preparation of the case for trial, went to the city of Louisville, in the State of Kentucky, and spent one day there in procuring evidence to secure a conviction of said Feadler for said offence. The case was not tried, but dismissed, because the State could not procure evidence sufficient to convict. The service of the plaintiff as attorney in that case was reasonably worth the sum of twenty-five dollars, which is due, and has never been paid, unless such service is covered by the terms of the written contract set out in finding 5 above.

" 7. While the contract in finding 5 was in full force, the plaintiff, in pursuance thereof and thereunder, performed services for the defendant, as its attorney, in reference to its legal business in Jennings county, Ind., and, among others, performed services as attorney for the defendant in the circuit court of said county, in the case of Kountz *vs.* The Ohio and Mississippi Railway Company, and in the case of The Ohio and Mississippi Railway Company *vs.* Meloy *et al.,* and

the services performed by the plaintiff as attorney for the defendant in those two cases were reasonably worth the sum of sixty-five dollars, and were paid for by the pass in said contract mentioned.

" 8. At the May term, 1885, of the Jennings Circuit Court, Jeremiah Walker brought an action against the defendant, The Ohio and Mississippi Railway Company, to recover damages for a personal injury sustained by him from a contact with defendant's locomotive in the public street of the city of North Vernon. Soon after the beginning of that action the general counsel of the defendant, said Charles A. Beecher, called upon the plaintiff and remarked to him that this was a very important case, that Jason B. Brown had been employed to defend the same for the company, that said Brown desired the plaintiff to be also employed to assist him in the defence of said case, that the railroad company was poor, and could not pay large fees, but that this was a case of so much importance to the company that it ought to pay to counsel defending the same a reasonable fee; to which the plaintiff replied that he would help to defend the case, and that he would leave the matter of his compensation to said Brown and to said general counsel, and to this said Beecher made reply that there would be no trouble about that, and for plaintiff to go ahead and hunt up all the evidence in relation to the case, and the happening of the injury complained of, and to the defence of said action, and to report, and also to assist said Brown in the defence of said action. The plaintiff collected the evidence in said cause, assisted in the defence of the action in the circuit court, and also in the preparation of the case for the Supreme Court, it having been appealed by the defendant, all of which the plaintiff did under the direction, and by the request of the general counsel of the defendant. The plaintiff's services as attorney for the defendant in that case from the beginning to the end thereof was reasonably worth one hundred dollars, which is due and

unpaid, and the defendant denied all liability on account thereof, and claimed that said services were covered by the contract set out in finding 5 above.

" 9. On the 1st day of January, 1886, the said plaintiff and defendant entered into a written agreement as follows, to wit :

" ' Legal Department, Ohio and Mississippi Railway Co.
" ' CINCINNATI, O., January 1st, 1886.

" ' DEAR SIR—In compensation for the legal services which you may render for the company in your county for the current year, I send you herewith our pass, good until December 31st, 1886. Please acknowledge its receipt.

" ' PERCY WERNER, *Ass't Gen'l Counsel.*
" 'To Hon. A. G. Smith, North Vernon, Ind.

" ' I accept the annual pass upon the terms above stated.
" 'A. G. SMITH.'

" 10. In the latter part of the year 1886 Edward Barton, Esq., who was not then in the employment of the defendant, but was in the employment of the law firm of Ramsey, Maxwell & Matthews, general counsel of the defendant, and by them intrusted with the matter of the employment of and correspondence with the attorneys of the defendant in Jennings and other counties in Indiana, called upon the plaintiff, A. G. Smith, at his law office, in North Vernon, Indiana, and introduced himself to plaintiff as being the person who had taken the place of Percy Werner, in the business of the Ohio and Mississippi Railway Company, and that he was around forming the acquaintance of the attorneys of that company. The plaintiff then remarked, ' I will not do any more work for the Ohio and Mississippi Railway Company for a free pass. Mr. Percy Werner construes my contract with the company as meaning that all the work I do for it is covered by and paid for by the railroad pass issued to me.' Mr. Barton remarked that the new management proposed to pay attorneys for the work they do.

"11. On the 10th day of January, 1887, the plaintiff wrote to the general counsel of the defendant as follows:

"'General Assembly of the State of Indiana.

"'Senate Chamber, Indianapolis, Jan. 10, 1886 [1887.]

"'Messrs. Ramsey, Maxwell & Matthews.

"'Solicitors O. & M. R. W. Co., Cincinnati, O.

"'Gentlemen—I herewith enclose my annual pass for 1886, issued to me as your local attorney at North Vernon. If you desire to retain me in your service any further, please renew the pass; if not, be kind enough to notify me of the fact at once. Having been engaged here for some time, I have neglected to write you upon the matter. Please address me, Grand Hotel.

"'I am truly yours,

"'A. G. SMITH.'

"And about the 16th day of January, 1887, Ramsey, Maxwell & Matthews, as solicitors and general counsel of the defendant, wrote to the plaintiff in reply to the letter last above set out, in substance as follows:

"'Hon. A. G. Smith.

"'We herewith enclose our annual pass to you as our local attorney at North Vernon, Ind., for the year 1887, which will compensate you for such incidental work as you may be called upon to render for the company in your county. For work requiring greater labor we will make such allowance as we deem reasonable.

"'RAMSEY, MAXWELL & MATTHEWS,

"''Solicitors.'"

" This letter was received by the plaintiff about the 16th day of January, 1887, and contained a railroad pass issued by the defendant to the plaintiff, entitling him to be carried on the cars of the defendant over its railroad in Indiana and Ohio free of charge during the whole of the year 1887. Said pass was accepted by plaintiff, and used by him after its receipt till the 1st day of January, 1888, although he did

not write any answer to this letter of Ramsey, Maxwell & Matthews.

"11½. During the year 1887 the plaintiff performed incidental work, such as answering letters of inquiry by defendant's solicitors, seeing to its taxes, looking after its business as to streets in the city of North Vernon, seeing to the solvency of the bonds of its station agents in Jennings county, and attending to its litigation in justices' courts in said county.

"12. On the 7th day of September, 1886, Clarissa Cooper, by her attorney, Geo. W. Cooper, brought her action in the circuit court of Jennings county, Indiana, against the defendant, to recover damages by reason of having been carried by the defendant beyond her destination, and put off of defendant's cars between stations, and claimed one thousand dollars damages. On the 8th day of September, 1886, the general counsel of the defendant wrote to the plaintiff as follows:

"'September 8, 1886.

"'A. G. Smith, Esq.

"'Dear Sir—We enclose you herewith a summons in the case of Clarissa Cooper *v.* O. & M. Ry. Co., for damages in the sum of $1,000. Please assume the charge of the defence for the company, and report the case to us.

"'Yours truly,

"'RAMSEY, MAXWELL & MATTHEWS,

"'General Counsel O. & M. Ry. Co.

"The plaintiff thereupon appeared for the defendant in said cause, and had it continued to the December term, 1886. He investigated the facts, making a trip to the city of Columbus, Indiana, for that purpose, and learning that the case could be compromised and settled by the payment of one hundred and fifty dollars, advised the settlement of the case on that basis. General counsel for the defendant adopted plaintiff's views as to the case, but it was not compromised, but continued at the December term. The plaintiff was

then directed to get the sworn statement of that plaintiff, Clarissa Cooper, and other witnesses as to the facts in the case, and for that purpose made a second visit to Columbus, Indiana, and then under the representation that the facts were sought for the purpose of effecting the compromise proposed, induced the plaintiff and her attorney to put into his hands sworn statements as to the facts in her case. These statements the plaintiff furnished to the general counsel of the defendant, and thereupon the general counsel of the defendant rejected all offers of compromising said cause, and directed the same to be defended, and if lost in the circuit court by defendant, to be appealed to the Supreme Court. Afterwards Hon. Hugh McMullen was employed to assist the plaintiff in the defence of said action. The case was tried at the October term, 1887, and resulted in a judgment for $500 for Clarissa Cooper, against the defendant. Plaintiff, Smith, made a motion for a new trial for the defendant, and afterwards effected a compromise, by which said judgment of $500 was discharged by the payment of $350. The services of the plaintiff as an attorney for the defendant in said cause from the beginning to the end was reasonably worth one hundred dollars, and he has never received any compensation therefor, except the pass issued to him in 1886 and 1887, as before stated, and if said services are not thus paid for they are due and unpaid.

"13. During the year 1887 the plaintiff, as the attorney of the defendant, at the request of its general counsel, but with no agreement as to employment and fees, except that set out in finding 11 above, performed legal services in the following cases brought, tried, and determined in the circuit court of Jennings county, Indiana, to wit:

1. Allen Hartwell *vs.* The Ohio and Mississippi Railway Company, for damages in the sum of $500, alleged to be occasioned by fire, compromised at the second term for $75, without trial. 2. Joseph W. Campbell *vs.* Ohio and Mississippi Railway Company, for $1,500 damages, for the al-

leged burning of a saw-mill by the negligence of the defendant. This case was tried at the second term, and resulted in a judgment for defendant for costs. The case was hotly contested throughout, many witnesses were examined, and plaintiff made the closing argument for the defendant to the jury. He arranged all the preliminaries for the trial, personally interviewed, and caused to be subpœnaed all the local witnesses for the defendant. He was assisted throughout the trial by Hon. Hugh McMullen, employed by the defendant for that purpose. 3. Elizabeth Jeffries *vs.* Ohio and Mississippi Railway Company, for damages for a personal injury. The cause was put at issue by plaintiff, Smith, and then compromised for the defendant by the payment of three hundred and fifty dollars. 4. Pilmer & Meek *vs.* The Ohio and Mississippi Railway Company, for damages to stock shipped over defendant's railroad. This case was investigated for defendant by plaintiff, Smith, and then advantageously compromised for $35 and the costs. The services of the plaintiff, as defendant's attorney, were reasonably worth in the first case mentioned in this finding (13), $50, in the second case $100, in the third case $50, in the fourth case $25, all of which is due and unpaid. No allowance was ever made to the plaintiff by the defendant for such services, but,·on the contrary, the defendant for more than one year before the commencement of the suit disclaimed all liability therefor. The plaintiff has never demanded of general counsel of. the defendant that they should fix a reasonable compensation for said services.

"14. This suit was commenced by the plaintiff against the defendant on the 10th day of May, 1889."

As we have seen, the contention of the appellant is that the court erred in its conclusion of law in finding for the appellee upon the facts found in findings numbers 4½, 8, 12, and 13.

By findings numbered 4½, 8, and 12 the court allowed the appellee for services rendered in the cases therein named in

the aggregate the sum of two hundred and fifty dollars. It seems clear under the facts found as relating to the services rendered and as set forth in findings $4\frac{1}{2}$, 8, and 12, that the facts so found made the appellant clearly liable for the value of said services thus rendered, and that the court did not err in its conclusions of law as to the amount so found for the appellee in these findings.

The remaining contention of the appellant is that the court erred in its conclusion of law upon finding numbered 13, wherein it allowed the appellee, in the aggregate, the sum of two hundred and twenty-five dollars for services rendered in the four cases therein named. It is claimed in argument that as the services mentioned in this finding were rendered under the letter of the appellant's solicitors set out in finding numbered 11, and as that letter provided that said solicitors should make such allowance for said services as they deemed reasonable, and that as no demand was made by the appellee for an allowance for said services before the commencement of the action, therefore the appellee could not recover therefor in this action. This position would perhaps be correct if sustained by the facts found. But it is not sustained by the facts found. While it is said in finding numbered 13 that plaintiff had never demanded of general counsel of the defendant to fix a reasonable compensation for his services," yet it was expressly found in that finding " that no allowance was ever made to the plaintiff for said services, but on the contrary the defendant, for more than one year before the commencement of this suit, disclaimed all liability therefor." A disclaimer by the appellant of all liability to the appellee for said services gave the appellee a right of action without requiring him to make demand to fix a compensation for his services. It is a familiar rule that where it plainly appears that a demand would be unavailing, or where a party by his acts waives a demand, none need be shown." "A demand is not neces-

sary of one disputing liability." "A tender of performance need not be made when it would be wholly nugatory."

" When it appears that the offer of performance would not have been accepted, such offer is thereby rendered unnecessary." *Booth* .v. *Fitzer,* 82 Ind. 66 ; *Toney* v. *Toney,* 73 Ind. 34 ; Waterman Specific Performance of Contracts, section 446.

There was no error in the conclusion of law as to this finding of fact, since we have found that the evidence is not in the record, and as all other questions raised by the assignment of errors, not arising out of the evidence, have been waived in argument, the conclusion we have reached determines the questions in this case.

The judgment is affirmed.

Filed May 11, 1892; petition for a rehearing overruled June 11, 1892.