## BENSON et al. v. FORE et al.

No. 18794. Opinion Filed Jan. 29, 1929.

Rehearing Denied April 30, 1929.

B. C. Franklin and R. P. Boulding, for plaintiffs in error.

. C. Guy Cutlip, Thos. J. Horsley, and K. H. Lott, for defendants in error.

DIFFFENDAFFER, C. This is an action brought by J. C. Fore, Toy Robinson, T. B. Slick, and N. M. Hancock, defendants in error, hereinafter referred to as plaintiffs, against James S. Benson, Jennie Whitfield, W. M. Whitfield, Stephen Pompey, Izora Pompey (Dindy), B. C. Franklin, Moty Cudjo, Lucy Cudjo, and Emroy W. Walton, plaintiffs in error, hereinafter referred to as defendants, to quiet title to certain real estate located in Seminole county, Okla.

It appears from the record that the S.W.¼ of section 23 and the N.E.¼ of the N.E.¼ of section 27, twp. 7 N., R. 7 E., constituted the allotment of Katie Davis, a Seminole freedwoman, No. 2460. Katie Davis died intestate about October 18, 1918, leaving as her heirs at law the following persons: Stephen Pompey, husband, Jennie Whitfield, daughter, Moty Cudjo, son, Izora Marshall (now Dindy), daughter, Harvey Mundy, son of a deceased child, and Virgie Davis and Wilson Marshall, children of another deceased child. After the allotment was made to Katie Davis, she married Stephen Pom-

pey. Her estate was administered in the county court of Seminole county, Stephen Pompey, her surviving husband, being the administrator. Shortly after his appointment, he petitioned the county court to set apart to him as his homestead the S.W.¼ of section 23, and on November 18, 1918, an order was made setting apart the 160 acres as the homestead of Stephen Pompey during his natural life, or so long as he should occupy same as a homestead.

On April 2, 1919, he filed in said administration proceedings a petition for final distribution in which he set out:

"Petitioner waives his right to claim homestead in and to any other part of said lands, except the above-described 40 acres, S.W.¼, S.W.¼, sec. 23, T. 7 N., R. 7 E"

On May 5, 1919, the county court entered an order of distribution and settlement of the final account of the administrator, in which it was found that Katie Pompey left, subject to distribution, the allotment above described, and an undivided one-sixth interest in certain other lands, and finding of heirship,

"subject, however, to the homestead rights of Stephen Pompey, the husband of decedent, in and to the southwest quarter of the southwest quarter, section 23, township 7 north, range 7 east, of the Indian base and meridian, That the said Stephen Pompey was the second husband of deceased, and said property was acquired by deceased prior to their marriage"

—and decreeing distribution accordingly.

Said decree specifically provides:

"It is further ordered by the court that the southwest quarter of southwest quarter, section 23, township 7 north, range 7 east, of the Indian base and meridian (same being the homestead of said Katie Pompey, deceased, which Stephen Pompey is now living·on), is set apart for the use of said Stephen Pompey, husband of said Katie Pompey, deceased, as long as he shall live."

On May 12, 1919, Virgie Davis, and Wilson Marshall and Stephen Pompey filed suit in the district court of Seminole county against Jennie Whitfield, Moty Cudjo, and Izora Marshall (now Dindy) for partition of the entire allotment of Katie Pompey (nee Davis). It appears that Harvey Munday had in the meantime sold his interest in the land to Moty Cudjo. All the defendants in that action, except Moty Cudjo, were duly served with summons, but an answer was filed by all the defendants. The answer was signed by Pryor & Stokes, attorneys for defendants. However, their authority to represent Moty Cudjo is not admitted by him, and he claims to have known nothing about the proceedings. He admitted having received some $1,200 from the estate, but claimed he did not know what it was for.

On November 1, 1919, a decree was entered in said court, in which it was decreed that said land be set off to the heirs according to their respective interests, and appointed commissioners to make the partition. Toy Robinson was one of the commissioners. However, it does not appear that at that time he had any interest in the land. Thereafter the commissioners filed their report showing that it was impossible to partition the land in kind without manifest injury, and placing valuation on the land at $12.50 per acre free and clear of the homestead rights of Stephen Pompey and at $10 per acre, subject to such homestead right. Thereafter, and on November 3, 1919, the matter came on for hearing upon the return of the commissioners. The court entered its findings showing that Katie Davis (Pompey) at the time of her death was the legal owner of the S. W. ¼, sec. 23, and the N. E. ¼ of the N. E. ¼, sec. 27, twp. 7 N., R. 7 E., and that Stephen Pompey was her surviving husband, and entitled to the S. W. ¼ of the S. W. ¼ of sec. 23, for and during his natural life, approving and confirming the report of the commissioners, and finding that one of the plaintiffs and one of the defendants had each elected to take the land at its appraised value, and that for such reasons a sale of the land to the highest bidder was necessary, and ordered the land sold; that portion of the decree being as follows:

"It is further ordered by the court that the sheriff of Seminole county make sale of all the above-described land, subject to the homestead rights of Stephen Pompey in and to the southwest quarter of the southwest quarter of section 23, township 7 north, range 7 east; that said sale be made in the manner and in the form as prescribed by law in sales by execution, and that when sold said land must bring two-thirds the value placed on same by the commissioners, and when sold the sheriff shall make a return of said sale to the court for the approval and ratification."

Pursuant to this decree, the land was advertised and sold by the sheriff of Seminole county. Plaintiff J. C. Fore was the highest bidder, he bidding the sum of $4,300. The sheriff made his return accordingly, and, on March 8, 1920, upon motion of plaintiff in said proceedings, and without objection the court confirmed the sale, and deed was thereafter executed by the sheriff conveying

said land to J. C. Fore, subject to the homestead rights of Stephen Pompey, as to the S. W. ¼ of sec. 23. Thereafter J. C. Fore conveyed an undivided one-half interest in the land to plaintiff, Toy Robinson. On June 2, 1922, Stephen Pompey by deed conveyed the S. W. ¼ of S. W. ¼, sec. 23, to J. C. Fore and Toy Robinson. Thereafter, it appears that Moty Cudjo set upon or was claiming some interest in the land. It does not appear from the record what his claim was, but it was probably based upon the fact that he was not served with summons in the partition proceedings and did not authorize any attorneys to appear for him. Thereupon, and on May 20, 1922, Fore and Robinson filed a suit in the district court of Seminole county against Moty Cudjo in which they alleged that they were the owners and in possession of the S. W. ¼, sec. 23, and the N. E. ¼ of N. E. ¼, sec. 27, and that defendant therein Moty Cudjo was claiming some right, title or interest therein, praying that the title to said lands be quieted in them, as against defendant therein, Moty Cudjo

Summons was duly served upon Moty Cudjo in that suit, and demurrer to the petition therein was filed on behalf of said defendant by Nolon & Ballard, attorneys for defendant. This demurrer was overruled July 18, 1922, and defendant Cudjo was given 15 days in which to answer. Thereafter, on August 24, 1922, defendant having failed to answer, plaintiffs in that action filed a motion for judgment on the pleadings as by default. On August 9, 1922. the matter came on for hearing on the motion, and defendant still having failed to plead further, he was adjudged in default: and evidence was introduced and judgment entered adjudging plaintiffs therein to be the owners of said land, and that Cudjo had no interest therein, and quieting title in plaintiffs.

The record further discloses that one Emma Davis. now Williams, one of the defendants herein, was the allottee of the W. ½ of the N. E. ¼ and the N. W. ¼ of sec. 26. twp. 7 N., R. 7 E. Seminole freedwoman, roll No. 2584. July 1, 1914, Emma Williams (nee Davis), joined by her husband, Thomas Williams, mortgaged the W. ½. N. E. ¼, sec. 26 to the Conservative Loan Company to secure a note for $600. and at the same time executed a second mortgage thereon to said company to secure two notes for $70 each, and on the same date the same parties executed a first and second mortgage to the same company on the N. W. ¼ of sec. 26 to secure notes for $1.500 and $300. There-

after, on March 31, 1919, Emma Williams and Thomas Williams conveyed the N. W. ¼ of sec. 26 by warranty deed to J. C. Fore and Toy Robinson, plaintiffs herein, and on October 18, 1919, they executed a mortgage on the W. ½ of the N. E. ¼ of sec. 26 to Toy Robinson and J. C. Fore to secure a note for $992.09, dated March 31, 1919. On March 18, 1921, a suit was filed in the district court of Seminole county by J. C. Fore and Toy Robinson to foreclose the last above-mentioned mortgage. Summons was issued thereon and returned showing personal service on each of the defendants therein. On May 13, 1921, an answer was filed in said cause, wherein they admitted the execution of the note and mortgage, and alleged as a defense that the note and mortgage sued upon therein were wholly without consideration, and therefore void and not binding on them. On November 30, 1921, judgment was rendered on the note and a decree of foreclosure entered. June 5, 1922, an order of sale was issued on said judgment, and thereafter the land covered by said mortgage was advertised and sold by the sheriff and return of sale filed July 11, 1922, to the plaintiffs therein, and on July 17, 1922, no objection having been filed, said sale was confirmed by the court, and sheriff's deed was thereafter executed conveying said land to J. C. Fore and Toy Robinson, plaintiffs herein.

On December 27, 1924, Moty Cudjo and Lucy Cudjo, husband and wife, executed and delivered to James S. Benson a power of attorney whereby said Benson was appointed their attorney in fact, with power to look after and handle and to employ counsel to protest, regain and recover the rights of Moty Cudjo and wife in and to certain real estate located in Seminole county, Okla., describing particularly the land embraced in the allotment of Katie Davis, giving unto said attorney power to do any and all things in the matter that they could do if personally present. On December 26. 1924, Benson, acting under said power of attorney, entered into a written contract with B. C. Franklin, attorney at law of Tulsa, Okla., whereby he employed said Franklin as attorney to protect, regain, and recover all the right, claim, interest, or estate of Moty Cudjo and Lucy Cudjo in and to lands described in the power of attorney. and providing that for his services therein Franklin was to receive one-half of all land and money recovered as a result of his efforts, and providing that said contract should operate as a mortgage to secure said Franklin for his fee and purported to release and con-

vey to said Franklin one-half of all land and money recovered. Similar power of attorney to Benson was executed by Jennie Whitfield and her husband, Stephen Pompey, Izora Dindy and Davis Dindy, and a like contract with Franklin was executed by Benson under this power of attorney. A further agreement was entered into by Benson under these powers of attorney, whereby he conveyed to Emory W. Walton of Shawnee, Okla., an undivided one-fourth interest claim and right in and to the same land including all oil and gas royalties, rentals and profits accrued and to accrue, in consideration of which Walton agreed to assist to clear title and regain possession of said lands. A further power of attorney was given to Benson, whereby he was empowered to employ an attorney to bring suit to recover these lands. Similar powers of attorney were executed by Emma Williams and T. H. Williams to Benson covering a portion of the lands here in controversy, and like contracts with B. C. Franklin were executed by Benson and similar contracts entered into with Walton in respect to a portion of the land embraced within the allotment of Emma Williams (nee Davis). These several powers of attorney, attorney's contracts and purported conveyances made by Benson were placed of record in the office of the county clerk of Seminole county, and the present action was brought by Fore and Robinson, joined by T. B. Slick and N. M. Hancock, who had acquired an interest in the lands, to cancel these several powers of attorney, attorney's contracts and assignments, and to remove the cloud cast thereby upon the title of plaintiffs. A demurrer was filed to the amended petition which was overruled, and Izora Marshall, Moty Cudjo, Jennie Whitfield, Stephen Pompey and Emma Williams filed separate answers. The separate answers of Izora Marshall and Jennie Whitfield are substantially the same. The defense therein set up is, in substance, that the title claimed by plaintiffs as to the Katie Davis land is based upon the sheriff's deed in the partition suit; and that said deed is void and of no force or effect, and conveyed no title by reason of the fact that the court clerk never issued a writ of execution, or an order of sale, directing and commanding the sheriff to make the sale.

The defendant Moty Cudjo pleads substantially the same defense, and in addition thereto alleged in substance that said sheriff's deed is void and of no force or effect as to him, for the further reason that he was never served with summons in the partition proceedings, and attaches copy of return of summons, which shows that said defendant was not served. He further alleges that he knew nothing whatever of the suit for partition until long after its termination; that he did not authorize any attorney to appear for him in that suit, and that if any one did appear for him, it was without warrant or authority; that he did not knowingly ratify the sale, and that if he received any of the proceeds thereof, he is able, willing and ready to pay same into court for plaintiffs. This answer is qualifiedly verified by R. B. Boulding, one of his attorneys. The separate answer of Stephen Pompey, the surviving husband of Katie Pompey ( nee Davis), contains five separate propositions. He pleads:

First. That at the partition sale, the lands of his deceased wife were sold subject to his homestead rights in the S. W. ¼, S. W. ¼ of sec. 23 only, whereas the county court in the administration proceedings had set apart to him as his homestead the entire S. W. ¼ of said sec. 23; copy of the order of the county court so showing is attached to his answer.

Second. That though he was made a party plaintiff in the partition suit, he did not sign the petition; that Norvell & Haulsee, the attorneys for plaintiffs in that action, informed him that the suit was one of partition only, and that the only object was to set apart to each of the heirs their respective shares of land, subject to his homestead rights, and that in no event would the land be sold. He attaches a copy of the petition in said action, together with the report of the commissioner, showing that a division in kind could not be equitably made; and further sets out and alleges in substance that Norvell & Haulsee had been his attorneys for many years; that he had complete confidence in them, and but for their representations to him that the land would not in any event be sold, he would have appeared and opposed the sale; and then alleges that he had been informed and believed, and therefore charged, that his said attorneys wrongfully and purposely deceived him, and that they confederated and conspired with plaintiff herein to bring about said sale, and that the land in fact could have been equitably divided in kind, and that thereby the court was overreached and a fraud perpetrated upon the court and this defendant; and that he had learned of the fraud and conspiracy within the last two years.

Third. That in the purported decree of sale in the partition suit, he was decreed to be the owner of only one-sixth of said estate

while, as a matter of law, he was entitled to one-third.

Fourth. That the sale in the partition suit was void for the reason that no execution or order of sale was issued by the court clerk, and

Fifth. That he has at no time to his personal knowledge executed any conveyance of his interest in the land to plaintiff; that he had from time to time borrowed money from them, and had at different times executed instruments for them, and that he was at that time indebted to plaintiffs in the sum of $105 which he tenders in open court for their use and benefit. This answer was properly verified by Stephen Pompey.

The separate answers of defendant Emma Williams admits that she was a Seminole freedwoman, and as such was allotted the N. W. ¼ and the E. ½ of the N. E. ¼, sec. 26, twp. 7 N., R. 7 E.; admits the execution July 1, 1914, of four mortgages thereon to the Conservative Loan Company, aggregating $2,540. She then alleges, in substance, that during the first part of 1919, she was still indebted to said loan company on the mortgages, but that certain payments had been made thereon so that the amount then remaining unpaid was less than one-half of the original sum, but that on one of the mortgages covering the W. ½ of N. E. ¼, sec. 26, the original amount of which was $600, there was then owing the sum of $992.09; that plaintiffs whom she had known for a long time, and to whom she had often gone for advice and counsel in matters of finance, and who were informed as to the facts concerning her financial difficulties, came to her and told her that she was sure to lose her land unless she got help; that they then proposed to her that if she would deed them the N. E. ¼ of sec. 26, they would clear the other 80 acres, so that she would have the 80 acres clear; that trusting them and relying on this promise, she did deed them the N. W. ¼, sec. 26; that at the same time they, by fraud and deceit, induced her to execute and deliver to them her promissory note of date March 31, 1919, for $992.09; that they falsely told her that this was necessary in order for them to negotiate a loan sufficient to clear the 80 acres, and told her that as soon as the loan was negotiated they would return the note to her; then followed allegations of similar fraudulent acts, whereby she was induced to and did, on the 18th day of October, 1919, execute and deliver to plaintiffs a mortgage on the 80 acres purporting to secure this note of $992.-09; that said note and mortgage were void for the reason that they were procured by fraud, and that the mortgage was void for the further reason that it attempted to secure a note made on March 31, 1919, without any new or additional consideration, and, further, that the note it purported to secure was void, and that it was given without consideration. The answer then recites at length the proceedings brought on the note and to foreclose said mortgage, the judgment obtained thereon, the order of sale, sheriff's sale, order approving sale, sheriff's deed, etc., and alleged that said judgment obtained was without her knowledge and consent, in that her attorneys failed to notify her of the time set for trial of said cause, and that had she been so notified she would have appeared and defended; it is then alleged that the entire proceedings were void for the reason that the mortgage and the petition to foreclose same showed on the face thereof that the mortgage was without consideration. Prayer was that all said proceedings be declared void, and for cancellation of all the instruments set out, including the judgment in foreclosure, order of sale, order of confirmation of sale, and sheriff's deed; and for judgment for the value of the use of the premises for the time plaintiff had been in possession, and for an accounting for oil royalties, rentals, etc. All the answers in addition to the affirmative allegations contained general denials.

Plaintiff replied to these several answers by general denial, and upon trial to the court, judgment was entered for plaintiffs quieting title in them to all the land involved, and canceling all the several powers of attorney, attorney's contracts, etc. From this judgment, defendants appeal.

The first proposition presented is, that the court erred in overruling the demurrer to the amended petition. It is urged that there is a misjoinder of causes of action and a defect of parties defendant, in that the heirs of Katie Pompey (nee Davis) are claiming an interest only in the lands included in her allotment, and Emma Williams (nee Davis) and her husband claim interest only in the part of the land embraced in her allotment; and that the amended petition shows on its face that the action involves two separate tracts of land, and is against two separate sets of defendants who claim an interest in separate tracts. Defendants cite that part of section 266, C. O. S. 1921, which provides:

"But the causes of action so united must all belong to one of these classes and must

affect all the parties to the action, except in actions to enforce mortgages or other liens."

Bryan v. Sullivan, 55 Okla. 109, 154 Pac. 1167, is cited and relied upon. We think that case not in point, as there the action was one at law, based upon separate bonds signed by separate sureties at different stages of a suit. Southwestern Surety Ins. Co. v. Douglas et al., 81 Okla. 232, 198 Pac. 324, is also cited on this proposition, but that case is clearly not in point. It was there held that an action to reform a guardian's bond may be joined with an action for damages for breach of the bond. Depuy v. Selby, 76 Okla. 307, 185 Pac. 107, is cited, but that case is likewise not in point, as the question there decided was the same as that decided in S. W. Surety Ins. Co. v. Douglas, supra.

An action to quiet title to real estate is provided for in section 466, C. O. S. 1921, which reads:

"An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein, adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession."

On the question of joinder of defendants in an action to quiet title, the general rule is stated in 32 Cyc. p. 1348, as follows:

"All persons claiming an interest in the land may be joined as defendants, although each claims a separate parcel of the land, under a distinct right."

Kincaid et al. v. McGown et al. (Ky.) 4 S. W. 802, is a case wherein the question here under consideration was involved. The statute then in force in that state provided:

"That hereafter it shall and may be lawful for any person having both the legal title and possession of lands, to institute and prosecute suit, by petition in equity, in the circuit court of the county where the lands or some part thereof may lie, against any other person setting up claim thereto; and if the plaintiff shall be able to establish, and does establish, his title to said land, the defendant shall be by the court ordered and decreed to release his claim thereto."

The question is discussed at some length, and the court quoted, with approval, from Pomeroy on Remedies and Remedial Rights, sec. 369, as follows:

"The very object of the proceeding (action to quiet title) assumes that there are other claimants adverse to the plaintiff, setting up titles and interests in the land, or other subject-matter hostile to his. Of course, all these adverse claimants are proper parties defendant, and, if the decree is to accomplish its full effect of putting all litigation to rest, they are necessary defendants."

In the body of the opinion, the court said:

"In an action to quiet the title to the land, all persons setting up claim thereto, whether each claims a separate parcel of the land or by distinct right, may be joined in the suit as defendants. Also, it seems clear that in an equitable action to quiet the title to land, independently of statutory authority, all of the adverse claimants, whether by independent titles or not, may be joined as defendants. Indeed, as the object to be accomplished is the putting of all litigation about the title to rest, it is not only desirable, but proper to make all adverse claimants defendants."

To the same effect is Carlson et ux. v. Curren et al. (Wash.) 93 Pac. 315, where it was held:

"In an action to quiet title, or to determine the rights of adverse claimants, plaintiff may make all the adverse claimants, defendants, even though there be no privity or connection between them."

See, also, Ellis v. Northern Pac. R. Co. et al. (Wis.) 45 N. W. 811.

In view of the fact that the powers of attorney given to Benson and the contracts executed by him thereunder, with defendants B. C. Franklin and Emory W. Walton, affected all the land involved, we conclude that there was no error in overruling the demurrer.

The next proposition urged is that, as to the Katie Davis land, the judgment is contrary to law in that in the partition sale no execution or order of sale was issued by the court clerk, and no appraisement was made by the sheriff, and the sale was therefore void. This contention, we think, is without merit. Section 491, C. O. S. 1921, provides:

"If none of the parties elect to take the property at the valuation, or if several of the parties elect to take the same at the valuation, in opposition to each other, the court shall make an order directing the sheriff of the county to sell the same, in the same manner as in sales of real estate on execution; but no sale shall be made at less than two-thirds of the valuation placed upon the property by the commissioners."

This section was literally complied with. But it is contended that, in addition to the order made by the court, there should have been an execution issued and an appraise-

ment made by the sheriff as in an ordinary sale of real estate on execution. It is clear that such is not the law, for the reason that the section just quoted provides what appraisel shall be followed; that is, the valuation placed upon the property by the appraiser provided for in section 487, C. O. S. 1921.

We think the order of the court is all that is required under the special proceedings for the partition of real estate.

It is next contended that the sale was void as to Moty Cudjo, for the reason that he was not served with summons in the partition proceedings, and under oath in his separate answer denied the authority of the attorney who appeared for him. We deem it unnecessary to discuss this question for the reason that suit was brought against him thereafter in which he was served with summons, and in which he appeared and filed his answer, and in which the title of plaintiffs was quieted as to him. That decree became final and is clearly res adjudicata as to him.

As to defendant Emma Williams (nee Davis), it is contended that the judgment is contrary to law for the reason that the note and mortgage under which 80 acres of her land, the W. ½ of the N. E. ¼, sec. 26, twp. 7 N., R. 7, was sold, were without consideration and the judgment and decree of foreclosure based thereon were void. This was a defense that could have been and was pleaded in the suit brought upon the note in the foreclosure proceedings. All the facts set up in her separate answer must have been known by her at the time she filed her answer in that action, as well as at the time she filed the answer in the instant case. She was represented by able counsel and could have presented every defense against the note and mortgage that she sets up here.

We have carefully examined the entire record, and are convinced that no other decree could have properly been entered. The several powers of attorneys and attorney's contracts are but clouds upon the title of plaintiffs' land which they are entitled to have removed.

The judgment should be, and is hereby, affirmed.

BENNETT, HERR, HALL, and JEFFREY, Commissioners, concur.