RENEGAR v. FLEMING et al.

No. 33314. Oct. 4, 1949.

Rehearing Denied Oct. 25, 1949.

Application for Leave to File Second Petition for Rehearing Denied Nov. 15, 1949.

*211 P. 2d 272.*

Chas. D. Scales, of Oklahoma City, for plaintiff in error.

John Barry, of Oklahoma City, for defendant in error Laura A. Fleming.

LUTTRELL, J. This action was brought by Laura A. Fleming against Owen F. Renegar, to cancel a conveyance of an undivided one-half interest in the minerals under an 80-acre tract of land in Oklahoma county, in the Edmond oil field. After the petition was filed other parties were brought into the action and various extraneous issues between them and the plaintiff affecting or connected with claims by them to oil and gas leases or mineral interests on her property were litigated. The trial court impaneled a jury to assist him in an advisory capacity, the case being one of equitable cognizance, and submitted to it certain interrogatories. The trial court adopted as its findings of fact the answers made by the jury to the interrogatories submitted to it, except in one instance which did not affect the defendant Renegar, denied the request of defendant Renegar for additional findings; found or concluded that plaintiff was entitled to judgment against the defendant Renegar, and rendered judgment canceling the mineral conveyance, a ratification of the conveyance, a subsequent contract entered into between plaintiff and Renegar, and the previous dismissal with prejudice of an action commenced by her against Renegar to cancel said mineral conveyance. The trial court required Renegar to pay interest on money due on oil runs impounded by the company producing oil from said premises because of this action, and rendered judgment against some of the other defendants. From this judgment, Renegar alone appeals.

The facts, about which there is very little dispute, are involved, and will be set out as concisely as possible. On November 12, 1943, plaintiff, a resident of Detroit, Mich., was the owner by inheritance of the west half of the southeast quarter of section 15, township 14 north, range 4 west, in Oklahoma county. On that date she orally agreed with one Kelly to sell him an oil and gas lease on said land, which agreement she claimed required him to pay the prevailing market price for such lease. On November 30, 1943, she and her husband executed a lease to Kelly and sent it with a draft attached for $2,400 to an Oklahoma City bank. Kelly refused to pay the draft, but filed an affidavit in the office of the county clerk of Oklahoma county, stating that he had purchased the lease for $1,200, and advising the public that he had a valid lease upon said property. On February 12, 1944, plaintiff came to Oklahoma City and entered into a written agreement to sell a lease on the property to F. D. and C. V. Stapp for $8,000 with an oral agreement that the Stapps were to bring an

action in her name and at their expense to cancel the Kelly affidavit. They employed Fred L. Hoyt, an attorney in Oklahoma City, and brought such an action in the name of plaintiff, but were unsuccessful in the lower court, which court rendered judgment in favor of Kelly, requiring plaintiff to specifically perform her contract with Kelly and make the lease upon payment of $1,200. This judgment was rendered on April 28, 1944, and on May 22, 1944, Kelly assigned the oil and gas lease to O. A. Cargill. Plaintiff appealed from the judgment, the petition in error being filed in this court on October 16, 1944.

During the period of time after her arrival in Oklahoma City and prior to the time she made the contract with the Stapps, plaintiff had consulted with another Oklahoma City attorney, Charles H. Garnett. Garnett, upon being informed of plaintiff's contract with the Stapps, took no steps on her behalf other than to make an amendment to the contract, and advised her to permit the Stapps to go ahead.

After she lost the case in the district court, plaintiff became dissatisfied with the manner in which the Stapps were conducting the case, and particularly with the delay in filing the appeal, and on July 17, 1944, at the suggestion of a client or former client of Renegar, went to Renegar's office and consulted with him about the case. On the following day she went back to his office, at which time she signed a power of attorney and conveyance whereby she made Renegar her attorney in law and in fact, with full power to handle, control and manage her property and sell or dispose of the same, and to take such steps or engage in such litigation in her behalf as seemed to him best, and conveyed to him a one-half interest in the minerals. Thereafter, she communicated with her husband in Detroit, and apparently acting upon his advice had Hoyt file an action to cancel the power of attorney and conveyance, which Renegar had theretofore placed of record. She also executed a revocation of the power of attorney.

On May 2, 1944, at Kelly's suggestion, she went to the office of O. A. Cargill, Kelly's assignee, who submitted to her a settlement proposition to end the suit she had brought to cancel the lease. At that time she refused to make settlement. Subsequently, after the appeal had been lodged in the Supreme Court, she went back to Renegar's office and entered into a contract with Renegar and an associate of his named Southard to give them an oil and gas lease on the property, to be held in escrow until the Kelly lease and the Stapp lease had been canceled, in which contract Renegar agreed that if she succeeded in canceling the other leases so that her title was clear he would release three-fourths of the mineral interest conveyed to him. At the same time she executed an oil and gas lease on the property to Southard and Renegar, in which lease she warranted the title and agreed to defend it; a dismissal with prejudice of the action brought by her against Renegar to cancel the conveyance, and a ratification of the conveyance.

Thereafter she consulted Mr. Garnett and advised him of what she had done, and at his suggestion entered into an agreement with O. A. Cargill to dismiss her appeal to the Supreme Court and thus validate the Kelly lease for a consideration of $4,000. This dismissal was filed in the Supreme Court on October 24, 1944, and on the same date the dismissal of her action against Renegar for the cancellation of the conveyance was filed in the district court.

Both Renegar and Hoyt filed motions in this court to set aside the dismissal, and Garnett filed therein a statement of fact calling attention to the complications into which plaintiff had gotten her property, and the motions to set aside the dismissal were by this court denied. Thereafter, on June 23, 1945, plaintiff and her husband and Renegar filed suit against O. A. Cargill, Hoyt, and the Stapps, seeking damages against

Cargill in the sum of $350,000 and seeking to quiet her title against the Stapps and Hoyt. The basis for this action for damages against Cargill was that he had failed to commence operations on the lease given him by plaintiff within 30 days from the date of the filing of the dismissal of the action in the Supreme Court in accordance with a letter mailed plaintiff by Cargill as a part of the consideration for the dismissal of her appeal. After this action was filed she consulted another attorney, Herbert K. Hyde, and acting upon his advice dismissed the action against Cargill and the Stapps. At about the same time, on September 13, 1945, this action was filed.

Defendant in his brief, under fourteen different propositions, contends that the trial court erred in overruling motions and demurrers filed by him against the petition and reply filed by plaintiff and against the cross-petitions filed in the actions by Hoyt and the Stapps. To deal with each of these fourteen propositions separately would unduly lengthen this opinion. Suffice it to say that we have carefully examined the pleadings attacked by the various motions and demurrers, and from such examination it does not appear that the trial court committed reversible error in overruling and denying them. While, as contended by defendant, plaintiff pleaded fraud and misrepresentation on the part of defendant in somewhat general terms, yet to plead the same more particularly would have required her to plead her evidence, which we have many times held was unnecessary. Defendant complains that plaintiff's attack on the various instruments which she executed in connection with the purported transfer of the mineral interest to him, and the instruments thereafter signed by her purporting to ratify such conveyance and to dismiss with prejudice the action brought to cancel her conveyance, constituted separate causes of action and should have been separately stated and numbered. We are of opinion, however, that the various steps taken after the execution of the purported conveyance were incident to and in aid of or subordinate to the purported conveyance, and were so connected with or ancillary to the main transaction that all of said instruments were in effect a part of one transaction, and that the petition stated but one cause of action when it sought the cancellation of all.

Defendant also complains of the bringing in of other parties and the assertion of their claims against him as well as plaintiff. In this respect the record shows that the lease originally made to the Stapps had been assigned to Hoyt and recorded, and plaintiff by an amendment to her petition brought him in the case and asked that her title be quieted against him. Upon his request the Stapps were also made parties since they were interested in the lease with him, and Cargill and others were made parties at Hoyt's request in order that he might again assert the invalidity of the Kelly lease. Demurrers of Cargill and these other parties to the cross-petition filed by Hoyt and the Stapps were sustained and they passed out of the case, and subsequently the Stapps withdrew the contention theretofore made by them that Renegar held the interest in plaintiff's mineral rights in trust for her and that the same was subject to their lease. Thus the issues when the case was tried involved, in addition to the cancellation of the various instruments executed by plaintiff to the defendant Renegar, the claim between plaintiff and Hoyt and the Stapps that they had been damaged by her dismissal of the action in the Supreme Court and her contention that their lease and claims, except the claim of Hoyt for an attorney's fee, constituted clouds on her title and should be removed. Since the claims of all the parties arose out of the contracts and leases on the property, the court could properly adjudicate them in one action, in order to quiet the title of plaintiff. Benson v. Fore, 136 Okla. 185, 276 P. 742; 64 A.L.R. 154.

The motions to strike and to make definite and certain were all addressed to the sound discretion of the trial court, and if in any respect in them the court erred, such error was harmless, since the defendant Renegar was in no wise prejudiced thereby. Ambrose v. Province, 150 Okla. 120, 300 P. 758; Hodges v. Reynolds, 170 Okla. 345, 40 P. 2d 1025.

Defendant next contends that the evidence of plaintiff wholly failed to show any ground for cancellation of the conveyance of minerals to defendant and that the trial court erred in overruling his demurrer to the evidence and motion for nonsuit and in submitting the matter to the jury upon interrogatories.

The facts outlined above in themselves indicate that plaintiff was, to say the least, unversed in matters or transactions incident to the conducting of lawsuits or the leasing or development of oil and gas properties. From the evidence it appears that she was, as characterized by her attorney, of a trusting and gullible nature, and that she apparently had implicit faith in every attorney whom she consulted. This is demonstrated by the fact that shortly after her transaction with Renegar, and upon being advised by Hoyt that Renegar had placed her conveyance to him of record and that she had parted with one-half of her royalty, she immediately requested him to take action to set the conveyance aside. In spite of this, when she contacted Renegar a second time, she yielded readily to his assurance that he, and he alone, as she testified, would get her out of her difficulties; signed a contract and another lease to him and Southard warranting the title thereto, although there were two prior leases against her property; signed a dismissal of the action against Renegar, and a ratification of his ownership of one-half of the mineral interest under the 80 acres. Subsequently, at Garnett's suggestion, she dismissed her appeal from the judgment in favor of Kelly and delivered the oil and gas lease theretofore executed by her to Cargill, and after all this, she, at Renegar's suggestion, signed a petition against Cargill and the Stapps, which petition recited that Renegar had one-half of the minerals under said tract. She testified that at the time she executed the power of attorney and conveyance to Renegar, it was expressly understood that the title to one-half the minerals was being placed in Renegar's name, but was not a conveyance thereof to him, and that nothing was to be done about the matter until her husband had approved it. This was denied by Renegar, who testified that he told her he would act in her behalf upon the payment of a cash fee of $1,500, and that she replied that she had no money and voluntarily offered to give him one-half royalty.

From the evidence it appears that the services rendered by Renegar were entirely disproportionate to the value of the one-half of the minerals, which Renegar and one of his witnesses testified was worth $50 an acre, and which Hoyt stated was worth $300 an acre. In the Supreme Court Renegar filed a motion to vacate the dismissal, and aside from that, except that he counseled with Hoyt a few times and supplied Hoyt with some citations to be considered by Hoyt in connection with the writing of the brief in the appeal in the original case, he did nothing prior to the time he and Southard obtained the lease from plaintiff. After that he filed the action for damages against Cargill, and to quiet title against Hoyt and the Stapps. That action was apparently filed without any investigation of Cargill's efforts to drill a well upon plaintiff's property, Cargill testifying that the erection of a derrick was begun upon this property within 30 days from the date of his letter to plaintiff, but that further efforts looking to the drilling of the well were temporarily discontinued, because of the violent objection of plaintiff's tenant on the land to the drilling of the well. Indeed, the likelihood of Renegar being able to recover anything for plaintiff in such lawsuit was so remote as to

be almost nonexistent, and the action, if prosecuted in good faith, was prosecuted by Renegar solely for the purpose of getting the other leases out of the way so that the lease made to him and Southard would become effective, since at that time approaching development had made the property very valuable for oil and gas purposes. If he succeeded, he had an interest in the lease more valuable than the mineral interest conveyed to him, in which he would still retain ten acres. If he failed, he still would retain the one-half interest in the minerals.

Another outstanding fact is that in the situation in which Renegar found plaintiff at the time he took the conveyance, there was little if anything which he could do to assist her. So far as the record shows, Hoyt was a lawyer of ability, who had had some experience in that class of cases, and who was naturally interested in setting the Kelly lease aside so that the Stapp lease, in which he had an interest, would be validated. Plaintiff testified that on the occasion of her first visit to Renegar, he told her that she was in an awful situation, and might lose her land; that Hoyt was not capable of handling the matter as it should be handled, and that he, Renegar, had much influence and weight because of his connection with the Federal Bar and the F.B.I., and that he alone was the one man who could obtain justice for her. This, of course, was denied by Renegar, but plaintiff insisted that those were his statements. All the evidence, when considered in connection with the facts and circumstances, was such as to justify the trial court in the conclusion that Renegar, in dealing with plaintiff, was actuated more by a desire to benefit himself than to extricate her from her difficulties. It is noteworthy that in the power of attorney and conveyance given by plaintiff to Renegar, there was no promise upon the part of Renegar to perform any legal services of any nature whatsoever for plaintiff. Although he testified that he orally agreed with her

that he would represent her in all actions in which her property might become involved, including accounting suits, or any other actions that might arise incident to the production of oil or gas from the property, the contract did not obligate him to perform any services of any kind whatever, it being recited therein that he was employed as attorney at law "to represent her in handling and managing said property and in handling any litigation necessary in said premises, and to do all things relative to said property that he deemed proper and to his best judgment."

Defendant asserts that he and plaintiff were dealing at arm's length, and that where the contract was made between them at the inception of his employment, the relationship of attorney and client did not exist and the contract was valid and binding upon the parties. However, from the testimony of plaintiff, which apparently was believed by the jury and by the trial court as well, it appears that the plaintiff was misled by the statements of the defendant to her regarding the critical situation in which, according to her testimony, he said she was involved, and led by him to believe that he had great influence with the courts, and that if she employed him he could extricate her property from the situation in which it was involved.

In 5 Am. Jur. p. 356, §159, in referring to contracts between attorney and client made at the inception of the relationship, it is said:

"A contract made under such circumstances is as valid and unobjectionable as if made between other persons not occupying fiduciary relations, and who are, in all respects, competent to contract with each other, and it will be upheld and enforced if it is fair and reasonable, is not champertous, or does not for other reasons contravene public policy. If, however, it appears that the contract was induced by fraud or misrepresentation, or that, in view of the nature of the claim, the compensation is so excessive as to evince a purpose

on the part of the attorney to obtain an improper or undue advantage over the client, the contract will not be enforced."

In McArthur v. Lotridge, 177 Okla. 184, 58 P. 2d 326, in passing upon the validity of a contract for a contingent fee, we said:

"A contract between attorney and client providing for a fee upon a contingent basis is not binding unless entered into in good faith (Board of Education v. Thurman, 121 Okla. 108, 247 P. 996), and such contract is rendered voidable if made with suppression or reserve of material facts or of apprehended difficulties (6 C. J. 740, §316). In the Thurman case the rule is stated as follows: 'A contract between attorney and client upon a contingent basis, to be binding, must be made in good faith without suppression or reserve of fact and without undue influence, and the compensation bargained for must be just and fair.'"

And in that case we held that where the evidence was conflicting, the trial court in basing his judgment upon the testimony of the plaintiff in view of the circumstances in the case, did not render a judgment clearly against the weight of the evidence.

In Haunstein v. McCallister, 172 Okla. 613, 46 P. 2d 552, we said that where a fee was based upon a contingency which never happened it was presumably fraudulent, and that whether the relationship of attorney and client was established before or after making the contract was immaterial.

We see no reason why the rule announced in McArthur v. Lotridge, supra, regarding contingent fees, would not also apply to a contract for a large fee made at the inception of the relationship of the parties. In fact, there is more reason for its application to such case than to a case in which the fee is made contingent upon the attorney recovering something of value for his client. A careful examination of the evidence, and consideration of it in connection with all the facts and circumstances in the case, leads us to the conclusion that the findings of the jury and the trial court that in his dealings with plaintiff the defendant was not acting in good faith, but that she was imposed upon by him, and that the services rendered by him were wholly insufficient to justify the conveyance of such a large mineral interest, were sustained by sufficient evidence. The subsequent efforts made by Renegar to procure the ratification, and the further statements procured by him from plaintiff that he was the owner of a one-half interest in the minerals under her land, evidence a belief or knowledge on his part that the conveyance to him was not fairly obtained, and was disproportionate to any services he could or did render plaintiff. Had he in his pleadings asked that the court allow him a fee for such services as he did perform, it is probable that the court would have made some allowance, as it did in the case of Hoyt. But be that as it may, we cannot say the judgment of the trial court is clearly against the weight of the evidence.

Defendant contends that the trial court erred in refusing to give instructions requested by him, and in giving certain instructions to the jury, and also in not making certain findings of fact requested by defendant. We have examined the instructions and are of opinion that those given the jury by the trial court fairly reflect the law applicable to the case. The instruction about which defendant makes his chief complaint is to the effect that contracts between attorney and client to the advantage of the attorney, made while such relationship existed, were presumptively fraudulent, and that the burden was on the attorney to show that the contracts were fair, just and equitable, and that in such case he could recover no more than reasonable compensation. Since under the authorities above cited it appears that such rule applies whether the contract was entered into at the inception of the relationship or after the existence thereof, we think the error, if any, in giving such instruction was harmless.

204

Some of the instructions requested by defendant were so long and involved that they would tend to confuse instead of aid the jury, and some of them were in substance given by the trial court. In any event, we consider that the instructions given fairly advised the jury as to the applicable law.

As to the findings of fact, we have heretofore held that a failure to make all the findings of fact requested by a party to an action is not erroneous where the findings made by the court separate the material and controlling facts and conclusions, thereby enabling such party to except to any finding or conclusion which he considers erroneous. Etchen v. The Texas Company, 82 Okla. 62, 199 P. 212; Kilgore v. Stephens, 159 Okla. 119, 14 P. 2d 690. The findings made by the trial court sufficiently covered the material questions involved, and its failure to submit to the jury other interrogatories or make other findings in accordance with the request of defendant did not constitute reversible error.

Defendant also complains that the trial court erred in rendering judgment against him for interest on the amount of money impounded by the oil company operating the property, such interest to start on April 7, 1947, one month after the judgment was entered. We agree with this contention. Neither in the pleadings nor the evidence was there any reference to the impounding of any royalty by any oil company, or the amount impounded, nor was any request made of the trial court at any time to render any judgment with reference to impounded royalty or interest thereon.

In Rogers v. Bass & Harbour Co., 47 Okla. 786, 150 P. 706, we said:

"A judgment which is entirely outside of any issue made by the pleadings or the evidence, in the case, is a nullity."

And in Central Nat. Oil Co. v. Continental Supply Co., 119 Okla. 190, 249 P. 347, we held that a judgment for interest, where there was no allegation of the right to such judgment in the petition and no prayer therefor, and such judgment was not supported by the pleadings or proof, was void, citing Rogers v. Bass & Harbour Co., supra, and other authorities.

It follows that the judgment for interest may not be sustained. But it is separable from the remainder of the judgment. The judgment is, therefore, modified by eliminating therefrom that portion which allows interest upon impounded funds, and as so modified is affirmed.

