Owen F. RENEGAR, Plaintiff in Error,

v.

Forrest STAPLES and Helen Staples, Defendants in Error.

No. 40150.

Supreme Court of Oklahoma.

Sept. 24, 1963.

Rehearing Denied Jan. 7, 1964.

Application for Leave to File Second Petition for Rehearing Denied Feb. 4, 1964.

Owen F. Renegar, Oklahoma City, pro se.

Lytle, Soule & Emery, Oklahoma City, for defendants in error.

JACKSON, Justice.

This action was brought in the trial court by Mr. and Mrs. Forrest Staples, as plaintiffs, against the defendant, Owen F. Renegar, an attorney, for the cancellation of an assignment made by the Staples to Mr. Renegar of an undivided one-fourth interest in their shares, as beneficiaries, in the estate of Walter F. Mullins, deceased.

The plaintiffs presented their case to the trial court by pleadings and evidence to the effect that on October 14, 1958, Mr. Renegar prepared the last will and testament for Walter F. Mullins, who is described by testimony as a brother of the plaintiff, Forrest Staples. The will gave each of the plaintiffs (Mr. and Mrs. Staples) an undivided one-third interest in the "residue" of his estate, and named Mr. Renegar as executor. Plaintiffs' petition further alleges, and their evidence shows, that on March 11, 1959, and while Mr. Renegar was actively discharging his duties as executor and attorney for the Mullins' estate that Mr. Renegar persuaded the plaintiffs to assign to him an undivided one-fourth interest in their shares as beneficiaries, under the last will and testament of Mr. Mullins, upon the false representation and pretense that a deposit which rightfully belonged to the estate in a bank at Hydro, Oklahoma, was being claimed by a sister of the testator with the active assistance of the banker; and that upon the promise of Mr. Renegar to exert his best efforts to recover the deposit as an asset of the estate the plaintiffs were persuaded to assign to Mr. Renegar an undivided one-fourth interest in their two-thirds of the "residue" of the estate. Their prayer for cancellation of the assignment was upon the ground that the assignment was void because (1) it was not supported by any consideration; (2) it was secured by fraudulent misrepresentations; and (3) the transaction was unconscionable and contrary to the public policy of the State of Oklahoma.

Defendant's answer consisted of a general denial, and an affirmative allegation that legal services rendered to Mr. and Mrs. Staples *prior* to the probate of the Mullins' will constituted the consideration for the assignment of the one-fourth interest in their shares.

Mr. Renegar testified that Mrs. Staples called him by phone on September 25, 1958, and stated to him that Mr. Mullins wanted to talk to him, and that he visited Mr. Mullins. He testified that when he returned to see Mr. Mullins on September 26 or 27, 1958, Mr. Staples followed him out of Mr. Mullins' (hospital) room and wanted to talk to him; that Mr. Staples stated to him that

he and Mrs. Staples needed some one to look after their affairs and Mr. Mullins' affairs; and that they had no money but would assign an interest in anything that Mr. Renegar might get for them out of the estate. Mr. Renegar testified that he agreed to "take it on one-fourth of whatever they might recover", and to "look after the various things", and that Mr. Staples told him at the time that he would want Mr. Renegar to look after his (Staples') mother's interest, his and his wife's interests, and Mr. Mullins' interest.

He said that pursuant to the agreement with Mr. Staples he wrote Mr. Mullins' will. Four or five drafts of wills were prepared for Mr. Mullins before an acceptable draft was signed by Mr. Mullins on October 14, 1958.

He further testified that the consideration paid by him for the one-fourth interest was his obligation to write the will and look after the legal interests of Mr. Mullins, the Staples, and Mr. Staples' mother; all of which obligations were incurred before the will was signed.

He also testified that pursuant to this agreement he wrote the will; he told Forrest Staples' mother how to prepare a holographic will; that he made a trip to Anadarko, Oklahoma, to look after her old age assistance; that prior to the death of Mr. Mullins on January 17, 1959, he talked with Mr. and Mrs. Staples numerous times on the telephone; that Mrs. Forrest Staples was not named in the first wills which were drafted by Mr. Renegar, but was named in the will which was executed by Mr. Mullins; and that he drafted a trust agreement.

He further testified the agreement for the assignment was reduced to writing in March, 1959, and agreeably executed by Mr. and Mrs. Staples without any significant discussion.

In reference to the Hydro bank account he testified that it was a joint account in favor of deceased and his sister, but that he had no difficulty in convincing the banker that the account belonged to the estate.

He denied that there was any connection between the bank account and the assignment of the one-fourth interest.

On cross examination he testified that while preparing the various drafts of the will he did not tell Mr. Mullins of the Staples' agreement to give him one-fourth of what they would or might receive under the Mullins' will; that although he would benefit from any bequests in favor of the Staples, he did not dictate or suggest the contents of the will to Mr. Mullins. However, in reference to his claim for compensation, under the assignment, Mr. Renegar wrote Mr. and Mrs. Staples on October 12, 1959, as follows:

"There were many things done for you from the inception of your first call and thereafter and if I had not intervened you would have received only $\frac{1}{3}$rd interest instead of $\frac{2}{3}$rds. The assignment covered interest on the real property of the estate but I have not yet claimed any interest in the real property."

It is admitted that Mr. Renegar was paid $560.00 as executor's fees, $600.00 as attorney fees for probating the estate, and $40.00 for car expenses. The estate was appraised at $18,393.70.

From the foregoing it is clear that the evidence was in conflict as to the *time* when the agreement was made between Mr. Renegar and the Staples and what services Mr. Renegar was to perform in return for the assignment. Mr. Renegar testified that the agreement was made *before* the relationship of attorney and client came into existence, and for the purpose of compensating him for his extra legal duties in preparing the will and looking after the legal affairs of Mr. and Mrs. Staples and Mr. Staples' mother. The Staples testified that the agreement was made *after* the relationship of attorney and client came into existence, and for the ostensible purpose of compensating Mr. Renegar for his best efforts to recover the deposit in the Hydro bank as an asset of the estate.

From the foregoing testimony the trial court concluded that the assignment of the one-fourth interests was null and void, and entered judgment cancelling the assignment. From this judgment Mr. Renegar has appealed.

Mr. Renegar's brief on appeal does not set forth any separate specifications of errors committed by the trial court, but from his original and reply brief we have concluded that his attack is upon the sufficiency of the evidence to support the judgment.

In their brief on appeal the Staples contend that the judgment is supported by the evidence, asserting that the evidence shows that (1) the assignment of the one-fourth interest was without any consideration; (2) that the assignment was secured by fraudulent misrepresentations; and (3) the whole transaction was unconscionable and contrary to the public policy of the State of Oklahoma.

Mr. Renegar invites our attention to his testimony, which is in substance that his agreement with the Staples was entered into *before* the relationship of attorney and client came into existence, and the rule of law announced in Tillman v. Gazaway, 128 Okl. 183, 261 P. 935, wherein we held:

"Where a *prospective* client makes a contract for the employment of an attorney, before the attorney enters on the business of such party, no confidential relationship exists, and the contract will stand on the same footing as any contract between persons competent to contract." (emphasis supplied)

Mr. and Mrs. Staples invite our attention to their testimony, which is in substance that their agreement with Mr. Renegar was entered into *after* the relationship of attorney and client came into existence, and the rule of law announced in the second paragraph of the syllabus in Haunstein v. McCalister, 172 Okl. 613, 46 P.2d 552, wherein we held:

"Contracts between attorney and client, to the advantage of the attorney, made while such relation exists, are presumptively fraudulent, and the burden of proof is upon the attorney to show that such contracts are fair, just, and equitable, and even then he is not entitled to recover more than reasonable compensation for his services, regardless of the contract price."

Our conclusion in the Haunstein case that a contract between a lawyer and his client, to the advantage of the attorney, made while the relationship exists, is presumptively fraudulent, suggests that no lawyer is to be trusted to deal fairly with his client while that relationship exists. The rule is based upon the reasoning that when the relationship of attorney and client comes into being there also comes into being a confidential relationship between attorney and client. 19 A.L.R. 847, Annotation, entitled "Validity and effect of contract after inception of relation of attorney and client as to former's compensation"; 7 Am.Jur.2d Attorneys at Law, § 211.

We know of no rule of reason, or historical experience, from which it may be concluded as a matter of law, that attorneys should be held in less esteem than others who hold relationships of confidence and trust with those whom they serve. Generally the burden of proof, or the burden of going forward with the evidence, does not shift to the person holding the position of trust and confidence until his opponent has presented some evidence or circumstances which indicates that he has been abused, defrauded, subjected to undue influence, or overreached. In the first paragraphs of the syllabi in Owens v. Musselman, 190 Okl. 199, 121 P.2d 998, and in Montgomery v. Wilbanks, 198 Okl. 684, 181 P.2d 240, we held:

"Fraud and undue influence will not be presumed, but ordinarily must be proven by clear, cogent and convincing testimony. However, where fraud

and undue influence are alleged and facts sufficient to show inadequacy of consideration and a confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced in a transaction between the parties."

We hold that the quoted rule is the rule which should be applied to attorneys contracting with their clients after that relationship is established, and that the rule in Haunstein v. McCalister, supra, must be modified to that extent.

We also held in the Haunstein case that even though an attorney does show that his contract with his client was fair, just, and equitable, that "even then he is not entitled to recover more than reasonable compensation for his services, regardless of the contract price." This rule makes it impossible for an attorney to enter into a binding fee contract with his client after that relationship is established, other than for a "reasonable compensation", which may ultimately be determined by the courts. The rule, if religiously followed by attorneys, will make it impossible for a client after the relationship has been established, to have any control over the fee other than for a "reasonable compensation."

■ While we do not mean to infer or suggest in the slightest degree that any attorney should ever over-charge his client, yet the *right* of an attorney and client to enter into an agreement for a contingent fee is established by the provisions of 5 O.S.1961 §§ 6, 7, and 8; and an attorney's lien is authorized under proper procedures. Such contracts, where the services have been performed, should be upheld unless they are contrary to law, oppressive, fraudulent, or obviously disproportionate to the services rendered by the attorney. Haunstein v. McCallister, supra, is modified to the extent indicated.

■ In continuing their argument that the assignment was without any valid consideration plaintiffs assert that the defendant, as executor and as attorney for the estate, was legally and morally bound to claim the Hydro bank account as an asset of the estate, and that it was improper for him to contract with plaintiffs to do that which he was already legally bound to do in representing the estate.

If the agreement for the assignment was actually made in March, 1959, for the purpose of securing defendant's best efforts to recover the deposit as an asset of the estate, as testified to by Mrs. Staples, then it appears to us that under the rules in the Haunstein case, as herein modified, the plaintiffs were abused and overreached in this transaction with the defendant.

■ Since the trial court entered judgment in favor of the plaintiffs, without making findings of fact, it is apparent that the trial court rejected the defendant's evidence and his affirmative defense which was based thereon. It is equally apparent that the trial court either determined that the defendant "intervened" and caused the testator to increase plaintiffs' shares in the "residue", enhancing the value of defendant's assignment, contrary to the public policy of the state (Canon 6, Canons of Professional Ethics, Vol. 1, page 375, Okla. Statutes 1961, Huber v. Culp, 46 Okl. 570, 149 P. 216); or that the contract and assignment was without consideration and should be canceled.

■ In Renegar v. Fleming, 202 Okl. 197, 211 P.2d 272, we held that if it appears that a contract for an attorney's fee was induced by fraud or misrepresentation, or that, in view of the nature of the claim, the compensation is so excessive as to evidence a purpose on the part of the attorney to obtain an improper or undue advantage over the client, the contract will not be upheld or enforced, but may be canceled in an action brought by the client.

■ In Renegar v. Bruning, 190 Okl. 340, 123 P.2d 686, we held that in cases of equitable cognizance, the judgment of the appellate court should not lightly displace the judgment of the trial court, which had the advantage of observing the witnesses on the stand.

■ While we are unable to determine whether the trial court followed either one or the other, or both, of plaintiffs' grounds for cancellation of the assignment, we are of the view that the judgment is supported on either ground. In a case of equitable cognizance the judgment of the trial court carries with it a finding of all the facts necessary to support it. Riddle v. Brann, 191 Okl. 596, 131 P.2d 999.

No contention was made in the trial court that the defendant should be paid a "reasonable compensation" for such services as he may have rendered for the plaintiffs.

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, and IRWIN, JJ., concur.