■ ATKINS & O'BRIEN L. L. P. et al., Respondents, v ISS INTERNATIONAL SERVICE SYSTEM, INC., Appellant. [678 NYS2d 596] —Order, Supreme Court, New York County (Richard Lowe III, J.), entered May 5, 1997, which denied defendant-appellant's motion to dismiss the complaint for failure to state a cause of action, unanimously affirmed, without costs.

The individual plaintiffs, Robert Atkins and John O'Brien, are former in-house General Counsel and Associate General Counsel, respectively, to defendant ISS International Service System, Inc. (ISS), a multi-national building maintenance and service company. In their complaint, they allege that in order to reduce ISS' costs, they were asked to consolidate ISS' corporate and risk- management legal functions and to " 'out-source' " these combined legal responsibilities to the plaintiff law firm, Atkins & O'Brien L. L. P., which was to be formed by the individual plaintiffs and operated on a fixed-fee, requirements-contract basis over a term of years.

The plaintiffs further alleged that pursuant to their agree-ment with ISS, they formed the plaintiff law firm in the sum-mer of 1995, taking the former in-house staff of eight attorneys, four paralegals and two secretaries with them, none of whom received severance pay from ISS. Moreover, the law firm as-sumed responsibility for honoring the vacation time its employ-ees had accrued while employed by the company. The law firm began performing the same legal functions the individual plaintiffs had performed in-house beginning on September 1, 1995.

Pursuant to a letter dated September 15, 1995, ISS agreed

"to enter into a fixed fee agreement with Atkins & O'Brien LLP (the 'Firm'), a law firm composed of attorneys who were previously employees of [ISS].

"While the details of the agreement have not been finalized, the Firm has committed to perform specified legal services for [ISS] for a fixed fee which will be at the level of $100,000 per month through 1995, $140,000 per month through 1996 and $150,000 per month thereafter, subject to such equitable adjustments as the parties may agree to in the event of changed circumstances.

"The formation of the Firm is perceived by the parties as a mutually advantageous event and it is expected that [ISS] will continue as a client of the Firm for the foreseeable future."

The plaintiffs further alleged that in reliance on this agree-ment, they leased office space in New York, Boston and San Antonio, hired additional staff and purchased office equipment,

furniture and supplies, and that the individual plaintiffs personally capitalized the firm and personally guaranteed a number of its leases.

According to plaintiffs, a more detailed description of their agreement was contemplated but never signed, because shortly after they left ISS, the management of that company changed, and the new management advised the plaintiffs that it did not like the outsourcing agreement. After attempts to reconfigure their relationship in a mutually acceptable way failed, ISS fired the law firm on February 21, 1996. Although ISS paid the firm essentially all amounts that became due under the contract through the end of February of 1996, it refused to make any subsequent monthly payments pursuant to the contract.

Plaintiffs instituted this action for breach of contract, equitable estoppel, breach of implied contract and promissory estoppel, seeking recovery of expected future fee payments for services they would have rendered had they not been improperly discharged. The defendant then moved to dismiss the complaint for failure to state a cause of action, asserting that, as a client, it was entitled to discharge its attorneys and pay only for services already rendered.

The IAS Court denied the motion to dismiss based on its conclusion that "[t]he complaint plead[ed] valid breach of contract claims which do not fall under the general rule that the client has an unqualified right to terminate the relationship relegating the discharged attorney to quantum meruit recovery for services already performed".

Initially, we find that the language of the above quoted agreement sets forth an agreement that plaintiff law firm would be employed by ISS "through" 1996, i.e., until the end of that year (*see*, *Rothenberg v Lincoln Farm Camp*, 755 F2d 1017, 1018-1019; *see also*, *Mason v New York Produce Exch.*, 127 App Div 282, 284-285, *affd* 196 NY 548). However, we reject plaintiffs' claim that the agreement extends beyond 1996. The mere stated expectation of the parties that the law firm would be employed for the "foreseeable future" is too vague a term to be enforced. Moreover, the setting of a monthly fee for work performed after 1996 without any indication of a termination date does not imply the extension of the agreement after that point on any other than a month to month basis.

Moreover, even as to the period of the contract subject to a specific duration, as a general rule, where there is a contractual relationship between a lawyer and client, the client has the right "to terminate the attorney-client relationship *at any time*

*with or without cause*" (*Matter of Cooperman*, 83 NY2d 465, 472 [emphasis in original]; *see also, Martin v Camp*, 219 NY 170; *Demov, Morris, Levin & Shein v Glantz*, 53 NY2d 553, 556). When a client discharges an attorney after some services are performed but prior to the completion of the services for which the fee was agreed upon, the discharged attorney is entitled to recover the reasonable value of services rendered in quantum meruit (*Matter of Cooperman, supra*, at 473). "The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause" (*Martin v Camp, supra*, at 174).

There have, traditionally, been two recognized exceptions to this general rule, i.e., where "the attorney in entering into such a contract has changed his position or incurred expense, or * * * where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract" (*supra*, at 176; *see also, Ehrlich v Rebco Ins. Exch.*, 198 AD2d 58; *cf., Kaplan v Heinfling*, 136 AD2d 34, *lv denied* 72 NY2d 810).

Here, plaintiffs contend that both exceptions apply to this situation, since they were employed under a general retainer and relied to their detriment on that agreement. These arguments have merit.

First, we reject defendants' argument that the general retainer exception was eliminated by the Court of Appeals in *Matter of Cooperman* (83 NY2d 465, *supra*), which held that a nonrefundable fee agreement for specific services in relation to a specific matter, in advance and irrespective of whether any professional services are actually rendered, violates public policy. The *Cooperman* Court did not hold that a general retainer whereby an attorney is paid solely for keeping him or herself available, or, as is the case here, whereby an attorney agrees to remain available as well as to perform specified ongoing services for a specific fee (*see, Ehrlich v Rebco Ins. Exch.*, 198 AD2d 58, *supra*), is per se unenforceable.

Nor do we find that such agreements should necessarily be deemed invalid. The potential for overreaching by an attorney made all too likely by the type of nonrefundable retainer set forth in *Cooperman* is simply not an issue here, where the agreement in question was fully bargained for by a sophisticated client fully aware of its prospective legal needs, of the

capabilities of the plaintiffs to fulfill those needs and of its rights and obligations under the retainer agreement.

Moreover, *Cooperman* is further distinguishable because the second exception to the rule permitting termination at will, i.e., where the attorney sets forth evidence that he or she was induced by the promise to rely to his or her detriment, is applicable here.

It is important to note that the estoppel exception to the general rule that attorney-client relationships may be terminated by the client at will does not apply where an attorney alleges no more than that he or she forwent other employment opportunities because of having agreed to handle a particular matter (*Demov, Morris, Levin & Shein v Glantz, supra*). However, in this case, there is much more. The plaintiffs asserted that in reliance on ISS' promise to retain them, at a specified rate, through 1995 and 1996, they founded plaintiff law firm and expended all of the start-up costs involved in setting up three separate offices. These allegations demonstrate significant detrimental reliance on the promise that the parties' agreement would continue at least through 1996.

Thus, for both of these reasons, the instant matter is distinguishable from *Cooperman* and the court properly declined to dismiss the complaint for failure to state a cause of action. Concur—Rosenberger, J. P., Ellerin, Wallach and Rubin, JJ.