2008 OK 66

**McQUEEN, RAINS & TRESCH, LLP, Plaintiff,**

v.

**CITGO PETROLEUM CORPORATION, Defendant.**

No. 105,553.

Supreme Court of Oklahoma.

July 1, 2008.

Oliver S. Howard, John Henry Rule, Mason Guy Patterson, Gable & Gotwals, Tulsa, Oklahoma, for the Plaintiff.

R. Brent Blackstock, James R. Lieber, Susan Hilary Stava, Hartman & Blackstock, Tulsa, Oklahoma, for the Defendant.

WATT, J.

¶1 The United States District Court for the Northern District of Oklahoma certified three questions of Oklahoma law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 1601, *et seq.* As consolidated and reformulated,[1] two questions are presented.[2] The first is:

"Whether, considering Oklahoma jurisprudence and the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, contracts between attorneys and clients containing liquidated damages provisions in fixed-fee, fixed-term agreements are enforceable under Oklahoma law?"

Here, the client is a large corporation sophisticated both in the commercial and the legal environment and was represented by its Vice President of Legal Affairs and General Counsel during contract negotiations. There are no allegations that the terms of the liquidated damages provisions are ambiguous. At a minimum, the firm altered its position to the extent that it equipped an office and provided legal counsel in an out-of-state location. Further, the liquidated damages provisions[3] contain CITGO's ex-

1. Questions of law may be reformulated pursuant to 20 O.S.2001 § 1602.1. *Tyler v. Shelter Mutual Ins. Co.*, 2008 OK 9, fn. 1, 184 P.3d 496; *McClure v. ConocoPhillips Co.*, 2006 OK 42, fn. 1, 142 P.3d 390; *Strong v. Laubach*, 2004 OK 21, ¶ 1, 89 P.3d 1066. As originally certified, the questions provide:

"A. In light of the apparent uncertainty cast upon earlier Oklahoma Supreme Court precedent (*White v. American Law Book Co.*, 106 Okla.166, 233 P.426 (Okla.1924), *Roxana Petroleum Co. of Oklahoma v. Rice*, 109 Okla. 161, 235 P. 502 (Okla.1924), and *Okmulgee Building & Loan Ass'n v. Cutler*, 174 Okla. 614, 51 P.2d 709 (Okla.1935))[sic] by the more recent policy found in the Oklahoma Rules of Professional Conduct (in particular Rule 1.16(d) and comment), an Oklahoma Bar Association opinion (Topic: Non-refundable Retainer Agreements, OK Adv. Op. 317 (Dec. 13, 2002), *available at* 2002 WL 31990267), and *Wright v. Arnold*, 877 Pl.2d]P.2d] 616 (Okla.Civ.App.1994) ),. [sic] are liquidated damages provisions in fixed fee, fixed term agreements between attorney and client enforceable under Oklahoma law?

B. If the answer to Question A is yes, does the enforceability of such provisions depend on the sophistication of the client and attorney reliance?

C. If the answer to Question A is yes, do the factors enunciated by the Oklahoma Supreme Court in *Sun Ridge Investors, LTD[Ltd.] v. Parker*, 956 P.2d 876 (Okla.

1998), relating to contracts in general, guide a reviewing court's assessment of whether the amount stipulated in a retainer agreement between an attorney and client is valid or void as a penalty?"

2. The certified questions ask that we determine, as a matter of law, whether a liquidated damages clause in a contract between an attorney and a client is enforceable under the facts presented; and, if so, whether general principles regarding the enforcement of such clauses apply in the context of the attorney client relationship. **At the outset, it is important to acknowledge what we are not asked to determine in resolving answers to the questions presented.** We need not resolve the issue of whether other factors relating to the contract might make it unenforceable, *i.e.* whether the firm's dismissal was excusable; whether the compensation provided is so excessive as to evidence a purpose on the part of the attorney to obtain an improper or undue advantage over the client; whether the parties negotiating the contract had authority to do so; whether the liquidated damages provisions serve as a penalty, *etc.*

3. The three agreements at issue contain virtually identical liquidated damages clauses providing:

**CITGO acknowledges that in reliance on this [Agreement], the Firm [MRT] has undertaken and continues to undertake costs and expenses to provide optimal legal representation to CITGO** and acknowledges that a premature

press acknowledgment that the firm further changed its position by undertaking certain costs and expenses to meet the demands of the contractual relationship. ·Under these unique facts, we answer the first reformulated and consolidated certified question "yes."

¶ 2 The answer to the first question necessitates that we address a second inquiry asking:

> "Whether general contractual provisions regarding the viability of liquidated damages provisions are applicable to contracts between attorneys and clients containing such clauses?"

Our answer to the second consolidated and reformulated question is also "yes."

## CERTIFIED FACTS[4] AND PROCEDURAL BACKGROUND

■■■ ¶ 3 L. Dru McQueen, Stuart A. Rains, and W. Kyle Tresch (attorneys) were employed as in-house counsel for the defendant, CITGO Petroleum Corporation (CITGO/client), in Tulsa, Oklahoma. In April of 2004, CITGO announced it would be moving its headquarters to Houston, Texas. Rather than relocate, the attorneys formed the plaintiff law firm, McQueen, Rains & Tresch, LLP (firm). Following CITGO's move, the client and the firm executed a series of engagement agreements.

¶ 4 The original engagement agreement is a letter retainer entered on August 2, 2004. Two additional supplemental engagement agreements were entered in December of the same year. The supplemental engagement agreements pertain to environmental representation and litigation management services. On February 2, 2005, the parties amended the retainer agreements. These contracts are referred to as the amended engagement agreement and the amended supplemental engagement agreements. All the agree-

ments were negotiated between the firm and CITGO's Vice–President of Legal Affairs and General Counsel.

¶ 5 The amended engagement agreement provides for the handling of certain legal matters on a fixed-fee basis during the four-year term of the engagement running from September 1, 2004 through August 31, 2008. During this period, the firm was to render services including: 1) counseling and contract review for over twenty of CITGO's client groups; 2) administration and payment of outside counsel fees for specified routine litigation; 3) management of employment litigation for Houston, Lemont, and CARCO excluding responsibility for payment of attorney fees for local counsel of such litigation; 4) maintenance of an office in CITGO's Houston headquarters with an attorney available during the work week; and 5) the provision of additional legal services for special projects or assignments outside the scope of the arrangement at agreed rates plus expenses.

¶ 6 Under the amended engagement agreement, CITGO obligated itself to pay the firm $7.5 million annually in monthly amounts of $625,000.00, to be billed by the firm on or before the first of each month. The parties agreed that the fixed fee was based on an evaluation of anticipated costs of current CITGO litigation expenses and anticipated new litigation arising during the ordinary course of business throughout the contractual period. In part, the determination of fixed fees was calculated taking into consideration representations of third-party law firms that they would assist the firm with the client's matters on a fixed-fee basis. Each quarter, the firm was to provide CITGO with a "raw" time report reflecting hours devoted to each operating group or client. If the actual litigation and related legal services differed sig-

---

termination of this [Agreement] would result in losses and damages to the firm that may be impossible to quantify. Consequently, in the event CITGO terminates this [Agreement] prior to the end of the initial term, CITGO will pay the Firm, as liquidated damages, the lesser of all monthly installments for the Initial Term remaining under the contract or 12 months of installments, in lieu of other direct, indirect or consequential damages. Such liquidated damages will be due and payable within 30 days

after termination of this [Agreement]. [Emphasis provided.]

4. In answering a certified question, the Court does not presume facts outside those offered by the certification order. *In re Harris*, 2002 OK 35, ¶ 4, 49 P.3d 710; *Jones v. University of Oklahoma*, 1995 OK 138, ¶ 5, 910 P.2d 987. Although we will neither add nor delete such facts, we may consider uncontested facts supported by the record. *In re Harris*, this note, supra.

nificantly from anticipated costs, the parties agreed to adjust the fixed fee or handle the matters outside the agreement.

¶ 7 The amended supplemental engagement agreements incorporated the terms and conditions of the amended engagement agreement and became effective on January 1, 2005 with expiration dates of December 31, 2008. CITGO agreed to pay annual amounts of $500,000 and $450,000 respectively, under the two supplemental agreements with the firm to bill the client on or before the first of each month for an amount representing 1/12th of the agreed annual total. Under these agreements, the firm was to provide legal counseling, advice and assistance to CITGO's employees, management, and outside counsel relating to routine environmental matters other than litigation and administratively contested proceedings. The firm also contracted to provide direct and indirect administrative and management services, general legal advice, and consultation in connection with all litigation matters in which the client was represented by outside counsel other than the firm.

¶ 8 The amended engagement agreement and the amended supplemental engagement agreements form the basis of the firm's federal suit against CITGO, filed on June 1, 2007, alleging that the client breached the three fixed-fee, fixed-term retainer agreements. These agreements contain virtually identical liquidated damages clauses providing:

> CITGO acknowledges that in reliance on this [Agreement], the Firm [MRT] has undertaken and continues to undertake costs and expenses to provide optimal legal representation to CITGO and acknowledges that a premature termination of this [Agreement] would result in losses and damages to the firm that may be impossible to quantify. Consequently, in the event CITGO terminates this [Agreement] prior to the end of the initial term, CITGO will pay the Firm, as liquidated damages, the lesser of all monthly installments for the Initial Term remaining under the contract or 12 months of installments, in lieu of other direct, indirect or consequential damages. Such liquidated damages will be due and payable within 30 days after termination of this [Agreement].

¶ 9 With approximately twenty-one months left in the contractual period or roughly halfway through the term of the contracts, on April 5, 2007, CITGO informed the firm that it was terminating the relationship created by the letter agreements. **It is agreed that CITGO prematurely terminated the amended engagement agreement and the supplemental engagement agreements. Nevertheless, the parties dispute whether the termination was excusable.** Although CITGO contends that the attorneys were discharged based on their inferior performance, the firm argues that the contracts were breached without cause. In filing the federal lawsuit, the firm did not seek recovery for services performed prior to its discharge. Rather, it claims that CITGO owes it termination payments required by the liquidated damages clauses contained in the various agreements.

¶ 10 Under the liquidated damages clauses, CITGO's premature termination of its attorney-client relationship with the firm requires it to pay up to twelve monthly installments of each fixed fee in lieu of other direct, indirect, or consequential damages. The liquidated damages sought exceed $4.6 million.

¶ 11 The parties stipulated that the issues turn on Oklahoma law. In response to various motions from both parties seeking judgment on their behalf, the district court filed an opinion and order on January 22, 2008. The district court concluded that there was no clear answer as to whether liquidated damages clauses similar to those at issue were enforceable under Oklahoma law. It ordered the parties to confer and agree on language to be included in the proposed certified question by January 28, 2008. On February 14, 2008, the federal court certified questions to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601, *et seq.* We set a briefing cycle which was concluded with the simultaneous filing of the parties' answer briefs on April 30, 2008.

¶ 12 A) **UNDER THE UNIQUE FACTS PRESENTED, WHERE THE CLIENT IS A LARGE CORPORATION SOPHISTICATED BOTH IN THE COMMERCIAL AND THE LEGAL ENVIRONMENT AND IS REPRESENTED BY A SKILLED NEGOTIATOR, THERE ARE NO ALLEGATIONS THAT THE LIQUIDATED DAMAGES PROVISIONS ARE AMBIGUOUS, THE FIRM ALTERED ITS POSITION TO THE EXTENT OF EQUIPPING AN OFFICE AND PROVIDING LEGAL COUNSEL IN AN OUT-OF-STATE LOCATION, AND THE LIQUIDATED DAMAGES PROVISIONS ACKNOWLEDGE THAT THE FIRM WILL NECESSARILY FURTHER ALTER ITS POSITION TO MEET THE CONTRACTUAL DEMANDS, A LIQUIDATED DAMAGES CLAUSE IN A FIXED-FEE, FIXED-TERM CONTRACT BETWEEN ATTORNEYS AND CLIENTS IS ENFORCEABLE IN OKLAHOMA.**

¶ 13 The firm argues that we should refuse to answer the issue of whether the liquidated damages provision is enforceable asserting that the cause is governed by *Roxana Petroleum Co. of Oklahoma v. Rice,* 1924 OK 1042, 235 P. 502, upholding an attorneys fee contract not unlike the one presented here. Should the Court determine it appropriate to revisit the question of the validity of such contracts, the firm asserts that *Roxana* should govern the cause presented. CITGO insists that *Roxana,* which preceded our adoption of the Oklahoma Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3-A (Rules of Professional Conduct) by twenty years,[5] is no longer good law. It contends that the Rules of Professional Conduct and the comments thereto preserve the client's unfettered right to discharge an attorney at any time, with or without cause, subject only to liability for payment of the lawyer's services actually rendered.

¶ 14 Arguments presented by CITGO and noted by the federal court in its opinion and order[6] make it clear that there is a legitimate question as to whether *Roxana* continues to be viable considering the Rules of Professional Conduct along with other Oklahoma persuasive authority. Resolution of the issue may be determinative of the cause before the certifying court.[7] Therefore, we disagree with the firm that the question presented concerning the contract's viability should not be answered. Nevertheless, under the unique facts presented, the position advocated by CITGO is unpersuasive.

### 1) Oklahoma's historical perspective on fee contracts between attorneys and clients.

¶ 15 In *Mellon v. Fulton,* 1908 OK 238, 98 P. 911, an attorney sued his client under terms of a general retainer agreement.[8] The attorney was retained by the

5. See, ¶ 20 and accompanying footnotes, infra.

6. *McQueen, Rains & Tresch, LLP v. CITGO Petroleum Corp.,* 2008 WL 199895 (N.D.Okla.2008) [The federal court found an analysis of the Rules of Professional Conduct and contemporary case law was necessary to the resolution of the cause despite the historical view taken by Oklahoma courts to contracts similar to the letter agreements at issue here.].

7. Title 20 O.S.2001 § 1602 providing in pertinent part:
 "Power to Answer: The Supreme Court ... may answer a question of law certified to it ... if the answer may be determinative of an issue in pending litigation ..."
 *Ball v. Wilshire Ins. Co.,* 2007 OK 80, ¶ 6, 184 P.3d 463 [The authority to answer questions certified extends only to issues which may be determinative of the cause.].

8. A general retainer agreement is a contract pursuant to which the client agrees to pay the attorney a fixed sum in exchange for an agreed price to cover all legal services arising during a specified period. *Gala Enterprises, Inc. v. Hewlett Packard Co.,* 970 F.Supp. 212 (S.D.N.Y.1997); *Wong v. Michael Kennedy, P.C.,* 853 F.Supp. 73 (E.D.N.Y.1994); *Roxana Petroleum Co. v. Rice,* 1924 OK 1042, ¶ 9, 235 P. 502. Under a general retainer, the client is paying the attorney for availability and the retainer fees are often deemed to be "earned" when paid. *Wong v. Michael Kennedy, P.C.,* see this note, supra. A special retainer is an agreement between an attorney and the client pursuant to which the client contracts to pay a specified fee in exchange for a specified service. *Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc.,* see note 23, infra; *Wong v. Michael Kennedy, P.C.,* see this note, supra. Here, the contract at issue does not fit neatly into the definition of either a

client for a period of five years at the rate of $60.00 per year. At the end of the retainer period, the attorney sued on the account. *Mellon* differs from the situation presented here in that the services sued upon were provided throughout the entire period of the contractual term. There was no premature termination of the retainer contract. Nevertheless, in upholding a referee's award of the $60.00 per year for a total compensation of $300.00, the *Mellon* Court made the following statement: "**It goes without saying that an attorney is as free to make any contract with his client on the subject of compensation for his services as is any other individual.**"[9] [Emphasis provided.]

¶16 Two cases which are particularly informative were decided by this Court in 1924. In *White v. American Law Book Co.*, 1924 OK 123, 233 P. 426,[10] an attorney sought to enforce a "contingency fee" contract against a former client. Like CITGO, the client prematurely discharged the attorney. Under the contract at issue, the client was to pay the attorney a fifty percent commission upon collection of the $100.00 due and owing on the payment for books or on the return of the books. **The *White* Court held that if the attorney was discharged without fault and prevented from fully performing by the client, he was entitled to his fee under the contract.**

 ¶17 In reaching its conclusion, the *White* Court disregarded a *quantum meruit*[11] argument applied by other courts. It recognized that an attorney-client relationship is one of reliance, trust, and confidence,

noting that when any one of the three is destroyed, the client has the absolute right to discharge the attorney. In holding in the attorney's favor, the *White* Court stated at ¶5 providing in pertinent part:

"... Where one employs an attorney and makes an express valid contract for his services, such contract is, generally speaking, conclusive as to the amount of such compensation. **If the attorney fully performs his agreement until discharged without cause, the measure of his damages should be the compensation named in the contract.** The client, in such case, breaks his contract and at least makes it difficult, and in some cases practically impossible, for an attorney to show the amount of his injury under the rule of quantum meruit. If the client prevents the performance which entitled the attorney to specific recompense, it would seem, that such amount and interest from the time it became due may be recovered in an action which sets forth such state of facts...." [Emphasis provided.]

¶18 The second and more instructive case is *Roxana Petroleum Co. of Oklahoma v. Rice*, 1924 OK 1042, 235 P. 502. The facts in *Roxana* are strikingly similar to those presented here. Like CITGO, the oil-company client in *Roxana* retained a group of attorneys as its representatives in 1912 on an outsourcing basis. Six years later, the oil company decided to consolidate its in-house legal department. Pursuant to agreement of the parties, the attorneys took over the oil

general or a special retainer. Instead, it is a "hybrid" retainer. Hybrids contain both provisions which are general in nature, in that they allow for the availability of the attorney, combined with a provision for future legal services. Annot., "Construction and Operation of Attorney's General or Classic Retainer Fee or Salary Contract Under State Law," 102 A.L.R.5th 253 (2002).

9. See also, *State ex rel. Howard v. Oklahoma Corp. Comm'n*, 1980 OK 96, fn. 5, 614 P.2d 45; *Pezold, Richey, Caruso & Barker v. Cherokee Nation Indus., Inc.*, 2002 OK CIV APP 40, ¶11, 46 P.3d 161.

10. In 1935, in the case of *Okmulgee Bldg. & Loan Ass'n v. Cutler*, 1935 OK 1132, ¶5, 51 P.2d 709, the Court relied on the holding in *White v. American Law Book Co.*, 1924 OK 123, ¶0, 233 P. 426

to determine that an attorney hired to file sixteen foreclosure actions with the attorney to recover one-half of the attorney's fees provided for in the notes and mortgages was entitled to collect fees pursuant to the contract. In *Cutler*, the attorney alleged that after the suits were filed, the mortgage company employed other counsel to complete the suits and refused to pay the contracted-for fees.

11. In the realm of attorney fee contracts, the term *quantum meruit* refers to awarding an attorney the value of services performed. *Musser v. Musser*, 1995 OK 116, ¶14, 909 P.2d 37; *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, ¶6, 598 P.2d 659; *Payne v. Archer*, 2001 OK CIV APP 17, ¶9, 19 P.3d 327.

company's legal department for an annual $15,000.00 retainer fee. In response to this agreement, the attorneys gave up all other existing clients. In 1919, the parties amended the agreement providing that the attorneys were to continue representing the company in Oklahoma and Texas, billing the oil company monthly on an hourly basis. Thereafter, the oil company discharged the attorneys based on assertions that the monthly billings were unreasonable.

¶ 19 Similar to CITGO here, **the oil company in *Roxana* asserted that there could be no recovery for breach of contract based on the premise that a client may discharge an attorney at any time, with or without cause, incurring liability only for services up to the date of discharge. The *Roxana* Court found the argument unpersuasive. It determined that the premise would not apply to a case where an attorney, in entering into the contract, changed positions or incurred expenses or in a situation where an attorney was employed under a general retainer for a fixed period to** perform legal services arising during the time frame.

¶ 20 Although not necessarily denominated as "liquidated damages provisions," contractual provisions between parties containing provisions for pre-set attorney fees have traditionally been upheld in Oklahoma.[12] Nevertheless, *Mellon, White,* and *Roxana* all precede the adoption of the Oklahoma Rules of Professional Conduct in 1988.[13]

¶ 21 Rule 1.16(a)(3), 5 O.S. Supp.2008, Ch. 1, App. 3–A[14] preserves the client's right to discharge an attorney while subsection (d) of the same rule requires the terminated attorney to take steps to protect the client, including "refunding any advance payment of fee or expenses that has not been earned or incurred." Comment 4[15] to Rule 1.16 preserves the right recognized in *Roxana* that a client has the authority to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Rule 1.5 requires that an attorney "not make an agreement for an unreasonable fee or an unreasonable amount for expenses."[16] Comment 4 to Rule 1.5 instructs

12. See, *Tipton v. Standard Installment Finance Co.,* 1966 OK 160, ¶ 15, 418 P.2d 309; *Lea v. American Nat'l Bank of Pryor Creek,* 1947 OK 294, ¶ 14, 186 P.2d 321; *First Nat'l Bank of Stigler v. Howard,* 1916 OK 716, ¶ 0, 158 P. 927; *Madill Bank & Trust Co. v. Herrmann,* 1987 OK CIV APP 4, ¶ 26, 738 P.2d 567.

13. Oklahoma's Code of Professional Responsibility was superceded in 1988, when the Oklahoma Rules of Professional Conduct were first adopted. *Arkansas Valley State Bank v. Phillips,* 2007 OK 78, ¶ 9, 171 P.3d 899; *Frasier, Frasier & Hickman, L.L.P. v. Flynn,* 2005 OK CIV APP 33, ¶ 18, 114 P.3d 1095.

14. Rule 1.16, Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App 3–A providing in pertinent part:

"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(3) the lawyer is discharged....
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... refunding any advance payment of fee or expenses that has not been earned or incurred...."
Comment [4] to Rule 1.16 providing in pertinent part:

"A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services...."
The version of the rules quotes was adopted by the Court on April 17, 2007, *In re Application of Oklahoma Bar Ass'n to Amend Oklahoma Rules of Professional Conduct,* 2007 OK 22, 171 P.3d 780. Although these rules were not effective until January 1, 2008, the current rules are referred to as they are substantially similar to the former version.

15. Comments to the rules do not add obligations to the Professional Responsibility Rules but merely provide the lawyer with guidance, explaining and illustrating the meaning of a particular rule. Violation of a rule does not give rise to a cause of action nor create the presumption of a legal duty nor should such violation serve as the basis for civil liability. Preamble: A Lawyer's Responsibilities, Scope, 5 O.S. Supp.2008, Ch. 1, App. 3–A

16. Rule 1.5(a), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App 3–A providing:

"A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the

a lawyer that a demand for advance payment may be made, but provides for the return of any unearned portion of the collected fee.[17]

¶ 22 In *Wheeler v. Scott,* 1991 OK 95, 818 P.2d 475, promulgated after the adoption of the Rules of Professional Conduct, **the Court acknowledged that attorney fees fixed by contract could be enforced even though the fees were greater than might be awarded in equity on a *quantum meruit* basis so long as the contract did not evidence a purpose on the part of the attorney to obtain an improper or undue advantage over the client.** Although the number of hours billed in *Wheeler* was reduced, the fee contract itself was upheld at the hourly rate agreed upon.

¶ 23 Two other comments made on attorney fees contracts should also be considered, one persuasive in nature[18] and the other advisory. In *Wright v. Arnold,* 1994 OK CIV APP 26, 877 P.2d 616, the Court of Civil Appeals determined that a non-refundable retainer provision in an hourly rate contract for legal services was unenforceable. The appellate court's decision was based, in part, on a conclusion that such a contract was an impermissible restraint on the right of a client to freely discharge its attorney. The same court concluded that such a contract violated provisions of the Rules of Professional Conduct in that an attorney may only be compensated for services actually performed. The Court of Civil Appeals specifically restricted its holding to non-refundable retainer provisions in hourly-rate contracts.[19]

¶ 24 An advisory opinion issued by the Oklahoma Bar Association Legal Ethics Committee (Ethics Committee) addresses the issue of whether a non-refundable fee agreement is *per se* a violation of the Oklahoma Rules of Professional Conduct. In ethics opinion No. 317, the Ethics Committee determined that in light of *Wright,* it was of the opinion that non-refundable retainer provisions in an hourly-fee agreement for services performed in the future "might" be unenforceable and "might" contravene Rule 1.16(d), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A.[20]

¶ 25 **It is worthy to note that neither** *Wright* **nor the Ethics Committee advisory opinion addresses directly the situation presented here. Both** *Wright* **and the ethics opinion involve non-refundable retainers associated with hourly-rate contracts. In contrast, the contract here is a fixed-fee, fixed-term contract.**

¶ 26 Undoubtedly, if we were to consider the holdings of *Mellon, White,* and *Roxana* in a vacuum, the result would be a determination in favor of the firm. However, promulgation of the Rules of Professional Conduct along with the comments thereto and the noted persuasive and advisory authority and jurisprudence from the majority of extant jurisdictions make it clear that, in most cases, the right of a client to discharge an attorney should take precedence over the attorney's ability to collect a contractually

skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent."

17. Comment [4] to Rule 1.5, Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, *id.,* providing in pertinent part:

"A lawyer may require advance payment of a fee, but is obliged to return any unearned portion...."

18. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 §§ 30.5 and 30.14.

19. *Wright v. Arnold,* 1994 OK CIV APP 26, fn. 3, 877 P.2d 616 providing in pertinent part:

"We do not address the issue of the enforceability of a non-refundable retainer fee in a contingency-fee contract or in a fixed-rate contract...."

20. Rule 1.16(d), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, see note 14, supra

fixed fee. Nevertheless, this case presents an unusual scenario.

### 2) The unique facts presented warrant enforcement of the contact between the firm and CITGO.

■ ¶ 27 Courts considering contractual relationships between attorneys and clients similar to the one presented here disagree as to whether the contracts should be enforced. In a majority of jurisdictions, the contracts have been determined to be unenforceable,[21] leaving attorneys to recover damages in *quantum meruit* rather than under the provisions of the attorney fee contract. These cases generally turn on the fact that a non-refundable retainer compromises the client's absolute right to terminate the unique fiduciary-client relationship.[22] **Nevertheless, even in jurisdictions where such contracts are normally struck down as against public policy, an attorney may recover contractual fees if, in entering into such a contract, the attorney has changed positions or incurred expenses.**[23]

¶ 28 A significant number of courts uphold contracts containing either non-refundable fee or liquidated damages provisions executed between clients and their attorneys.[24]

**21.** *Levison, Lerner, Berger & Langsam v. Medical Taping Systems, Inc.*, see note 23, infra [A contract providing for monthly fees both for availability and for services rendered struck, attorney allowed to recover in *quantum meruit*.]; *Wong v. Michael Kennedy, P.C.*, see note 8, supra. [Special retainer agreement providing for a non-refundable retainer of $250,000.00 to be considered as earned and non-refundable struck as *per se* violative of public policy and unenforceable.]; *In re Production Assoc., Ltd.*, 264 B.R. 180 (N.D.Ill.2001) [Hybrid fee agreement would be considered as property of the bankruptcy estate rather than of the attorney as fee imposed by contract.]; *In re Gray's Run Technologies, Inc.*, 217 B.R. 48 (M.D.Pa.1997) [Hybrid retainer is, in effect, non-refundable special retainer and remained property of bankruptcy of estate rather than of attorney.]; *In re Bressman*, 214 B.R. 131 (D.N.J.1997) [Although non-refundable retainer agreements are generally found permissible under New Jersey law, the same non-refundable retainer fee is considered property of the bankruptcy estate rather than property of the attorney.]; *Iowa Supreme Court Bd. of Professional Ethics & Conduct v. Apland*, 577 N.W.2d 50 (Iowa 1998) [Non-refundable fees void and unethical.]; *Matter of Hirschfeld*, 192 Ariz. 40, 960 P.2d 640 (1998) [Non-refundable retainer not *per se* unenforceable if reasonable.]; *Cohen v. Radio–Electronics Officers Union*, 146 N.J. 140, 679 A.2d 1188 (1996) [Hybrid attorneys fee agreement not enforced to extent of contractual obligation]; *Olsen & Brown v. City of Englewood*, 889 P.2d 673 (Colo.1995) [Attorney hired under contract for set monthly fee entitled only to recovery in *quantum meruit* rather than contract price.]; *AFLAC, Inc. v. Williams*, 264 Ga. 351, 444 S.E.2d 314 (1994) [Provision in retainer agreement requiring payment of 50% of sums due under remaining term of agreement if client terminated agreement was unenforceable.]; *Seminatore v. Medical Mut. of Ohio*, 136 Ohio App.3d 758, 737 N.E.2d 1016 (2000), *appeal not allowed*, 89 Ohio St.3d 1430, 729 N.E.2d 1199 (2000) [No requirement remained to pay retainer once settlement agreement was reached.]; *Plunkett &*

*Cooney, P.C. v. Capitol Bancorp Ltd.*, 212 Mich. App. 325, 536 N.W.2d 886 (1995) [Where attorney's employment is prematurely terminated, attorney is entitled to compensation for reasonable value of services, not on basis of contract.]; *Jennings v. Backmeyer*, 569 N.E.2d 689 (Ind.App. 1991) [Attorney retained on non-refundable fixed fee contract to represent client entitled to only reasonable value of services rendered before client's death.]; *Anton, Raleigh & Wynne v. Wellston Fire Protection Dist.*, 671 S.W.2d 378 (Mo. App.1984) [Hybrid retainer agreement would not be enforced against client.]. See, Annot., "Construction and Operation of Attorney's General or Classic Retainer Fee or Salary Contract under State Law," note 8, supra

**22.** *In re Cooperman*, 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994).

**23.** *Levisohn, Lerner, Berger & Langsam v. Medical Taping Systems, Inc.*, 20 F.Supp.2d 645 (S.D.N.Y. 1998); *Kelly v. MD Buyline, Inc.*, see note 24, supra. These cases provide an exception to the New York case of *In re Cooperman*, see note 22, supra, which seemed to establish a bright-line rule in New York that hybrid agreements would not be considered enforceable under that state's law.

**24.** *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 102 A.L.R.5th 719 (10th Cir.2002) [Attorneys' retention of agreed-upon flat fee for representation in a criminal case after being fired without cause did not give rise to valid claim for unjust enrichment.]; *Bunker v. Meshbesher*, see note 29, infra [Oral agreement for non-refundable retainer could be enforced.]; *In re Armstrong*, 234 B.R. 899, 181 A.L.R.Fed. 723 (E.D.Ark.1999) [Monies paid to attorney for criminal representation remained property of the attorney under contract provisions.]; *Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420 (S.D.N.Y. 1998) [Non-refundability provisions upheld where attorney relied reasonably and to his detriment on client's promises by changing his posi-

Non-refundable retainer fees and other non-refundable provisions have been upheld where: the fees set out are reasonable;[25] the contract is negotiated with a sophisticated client and the retainer agreement contains an agreement by the client to compensate the lawyer if the client terminates the relationship;[26] the contract is in writing with a clear statement of the consequences of the provision;[27] or where the attorney, in entering the contract, has changed positions or incurred expenses to meet the needs of the client.[28] At least one court has determined that non-refundable contractual provisions should be enforced if the client's desire to have a particular attorney as a representative necessitates an immediate commitment at the risk to the attorney of forgoing or losing other potential business.[29] Another acknowledges that fees paid to a lawyer that the client has agreed are not refundable are not prohibited *per se*.[30]

¶ 29 The unique facts presented place the contracts at issue here squarely within the ambit of jurisprudence from other states in which such non-refundable fee agreements have been found enforceable. Here, the client is a large corporation sophisticated both in the commercial and the legal environment and was represented by its Vice President of Legal Affairs and General Counsel in contract negotiations. There are no allegations that the terms of the liquidated damages provisions are ambiguous. At a minimum, the firm altered its position to the extent that it equipped an office and provided legal counsel in an out-of-state location. Further, the liquidated damages provisions contain CITGO's express acknowledgment that the firm further changed its position by undertaking costs and expenses to meet the demands of the contractual relationship. Therefore, under the unique facts presented, we determine that the contract at issue is not *per se* unenforceable under either our jurisprudence or the Rules of Professional Conduct.

tion or incurring expenses upon entering into client agreement. Ordinary rule in New York limiting attorney compensation to *quantum meruit* inequitable where client changed position and relied to his detriment on client promises.]; *In re Disciplinary Proceedings Against Ward*, 2005 WI 9, 278 Wis.2d 1, 691 N.W.2d 689 [Non-refundable fees not a *per se* violation of standards of professional responsibility but are typically permissible.]; *In re Conduct of Gastineau*, 317 Or. 545, 857 P.2d 136 (1993) [Indicating that non-refundable fee agreements may be permissible where a lawyer agrees to take a number of cases from one source with a flat fee charge per case, although some cases take but a short time to complete.]; *Tonn v. Reuter*, 6 Wis.2d 498, 95 N.W.2d 261 (1959) [Where client breaches contingent fee contract, attorney allowed to recover the amount of the contingent fee based upon the amount of the settlement or judgment ultimately realized by the client. Deduction for services yet to be performed should not be made.]; *Henson v. American Family Corp.*, 171 Ga.App. 724, 321 S.E.2d 205 (1984) [Recognizing that letter agreements were enforceable if approved by the appropriate authority.]; *Ohio & M.Ry.Co. v. Smith*, 5 Ind.App. 36, 31 N.E. 371 (1892) [Retainer agreement upheld and additional fees awarded.]. See, Annot., "Construction & Operation of Attorney's General or Classic Retainer Fee or Salary Contract Under State Law," note 8, supra. See also, *Nordling v. Northern States Power Co.*, 478 N.W.2d 498 (Minn. 1991)[In-house attorney not precluded from bringing an action for wrongful discharge against employer.].

25. *National Credit Union Admin. Bd. v. Johnson*, 133 F.3d 1097 (8th Cir.1998) [Transfer to law firm of reasonable non-refundable retainer was not illegal *per se* under the Federal Credit Union Act.].

26. *Cohen v. Radio–Electronics Officers Union, Dist. 3, NMEBA*, 146 N.J. 140, 679 A.2d 1188 (1996) [The penalty imposed for termination must not be such that it chills the client's right of termination. Six month notice of termination was excessive.].

27. See, *In re Disciplinary Action Against Geiger*, 621 N.W.2d 16 (Minn.2001) [Acknowledging that an advisory opinion from the Lawyers Professional Responsibility Board allowed availability and non-refundable retainer agreements where the contract contains a clear statement of the nature of the agreement.].

28. *Atkins & O'Brien LLP. v. ISS Intern. Service System, Inc.*, 252 A.D.2d 446, 678 N.Y.S.2d 596 (1998).

29. *Bunker v. Meshbesher*, 147 F.3d 691 (8th Cir. 1998), *rehearing & suggestion for rehearing denied* (1998); *In re Lochow*, 469 N.W.2d 91 (Minn. 1991);

30. *In re Disciplinary Proceeding Against Kagele*, 149 Wash.2d 793, 72 P.3d 1067 (2003) [Restitution could not be considered an aggravating factor in disciplinary proceeding where the attorney failed to return monies to clients obtained as a result of non-refundable fee agreements.].

**¶ 30 B) IF FACTS WARRANT THE EN-FORCEMENT OF A LIQUIDATED DAMAGES PROVISION BETWEEN AN ATTORNEY AND CLIENT, THE GENERAL CONTRACTUAL PROVI-SIONS REGARDING THE VIABILI-TY OF LIQUIDATED DAMAGES PROVISIONS ARE APPLICABLE TO CONTRACTS BETWEEN AT-TORNEYS AND CLIENTS CON-TAINING THOSE PROVISIONS.**

¶ 31 Our holding that the liquidated damages clauses are not *per se* unenforceable under the unique facts presented necessitates that we answer a second question: whether the same provisions should be measured by the principles announced in *Sun Ridge Investors, Ltd. v. Parker,* 1998 OK 22, 956 P.2d 876 to determine their validity. Both parties assert that *Sun Ridge* is applicable to the situation presented. Nevertheless, CITGO urges that the requirements for determining a valid liquidated damages provision should be altered to include what it perceives as an "expanded requirement;" *i.e.,* that the contract damages should reasonably relate to the actual damages suffered.

¶ 32 We are not convinced that the opinion released by order of the Court of Civil Appeals in *Lasalle Bank Nat'l Ass'n v. Shepherd Mall Partners, L.L.C.,* 2006 OK CIV APP 91, 140 P.3d 559, upon which CITGO relies and which has only persuasive value,[31] expands the test announced in *Sun Ridge.* Nevertheless, we do agree that the factors outlined in *Sun Ridge* for measuring the validity of a liquidated damages provision are applicable here.

¶ 33 An attorney, like any other individual, may contract with a client regarding compensation.[32] Contracts between attorneys and their clients stand on the same footing as any other contract between persons competent to contract and are upheld unless contrary to law, oppressive, fraudulent, or the fee is obviously disproportionate to the services rendered.[33] **In enforcing an attorney fee contract, the contractual provision is interpreted based on general contract principles.**[34]

¶ 34 Contractual terms imposing a penalty for the nonperformance thereof are void generally.[35] Nevertheless, Oklahoma law allows contractual, non-penal, liquidated damages provisions.[36] In *Sun Ridge,* this Court acknowledged that such clauses would not be upheld where they were in effect a penalty. In recognizing this premise, we also set out the criteria under which a liquidated damages provision would be upheld. Under *Sun Ridge,* a liquidated damages provision will not be considered a penalty if: 1) the injury caused by the breach is difficult or impossible to estimate accurately; 2) the parties intend to provide for damages rather than a penalty; and 3) the sum stipulated is a reasonable pre-breach estimate of the probable loss.

¶ 35 CITGO asserts that *Sun Ridge* was expanded by the Court of Civil Appeals in *Lasalle* by adding the requirement that the amount denominated as liquidated damages must be related to the damages actually suffered at the time of the breach. The

---

**31.** Rule 1.200, Supreme Court Rules, see note 18, supra; 20 O.S. 20–021 §§ 30.5 and 30.14, see note 18, supra.

**32.** *Mellon v. Fulton,* 1908 OK 238, 98 P. 911.

**33.** *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, ¶ 13, 818 P.2d 475; *Renegar v. Staples,* 1963 OK 207, ¶ 0, 388 P.2d 867; *Tillman v. Gazaway,* 1927 OK 484, ¶¶ 17–18, 261 P. 935

**34.** *McGuire, Cornwell & Blakey v. Grider,* 765 F.Supp. 1048 (D.Colo.1991), *amendment denied,* 771 F.Supp. 319 (D.Colo.1991) [Oklahoma state law found controlling as to interpreting and enforcing terms of attorney fee contract.].

**35.** Title 15 O.S.2001 § 213 providing in pertinent part:

"Except as expressly provided in Section 215 of this title, penalties imposed by contract for any nonperformance thereof, are void...."
*Sun Ridge Investors, Ltd. v. Parker,* 1998 OK 22, ¶ 7, 956 P.2d 876.

**36.** Title 15 O.S.2001 § 215(A) providing in pertinent part:

"A stipulation or condition in a contract ... providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages."

argument is unpersuasive. In *Lasalle,* the appellate court states that "in order to be enforced, the amount of liquidated damages must not be an excessive amount" and refers to ¶ 13 of *Sun Ridge* providing in pertinent part:

> In reviewing the case at bar, we find that the $5.00 per day "additional rent" sought to be imposed for late-payment or non-payment of rent is a penalty, in the absence of any evidence to the contrary showing actual costs incurred by the Landlord.

The Court found that the provision in *Sun Ridge* for "additional rent" of $5.00 per day combined with a $20.00 late fee constituted an unenforceable penalty provision where no evidence existed to rebut the finding by showing the actual costs incurred as a result of the breach. Plainly, the requirement that damages must be reasonable is encompassed within the requirement enumerated in *Sun Ridge* that the pre-breach estimate bear some relationship to the estimate of probable loss.

¶ 36 **We are not asked to determine whether the liquidated damages clauses should be denominated as penalty provisions under the criteria announced in** *Sun Ridge*.[37] We resolve only the narrow question of whether the *Sun Ridge* factors are applicable to determine whether the liquidated damages provisions constitute an unenforceable penalty provision. Just as general contract law is applicable to contracts executed between lawyers and clients,[38] we determine that the factors outlined in *Sun Ridge* may be utilized, if necessary, to evaluate liquidated damages provisions appearing in attorney fee contracts.[39]

### CONCLUSION

▇▇▇▇▇ ¶ 37 Courts should be reluctant to disturb fee arrangements freely entered into by knowledgeable and competent parties.[40] However, a contract between a lawyer and a client is not an ordinary contract because of the existence of a fiduciary relationship.[41] Nevertheless, we recognize that fixed-fee structures may often be beneficial to large corporations. They may allow the corporation to quantify and control its litigation expenses on an ongoing basis. Clients who regularly retain lawyers bargain for innovative fee arrangements that limit the right of discharge in exchange for lower fees. It would be counterproductive, in an era of increasing concerns over the cost of legal services, to preclude a client from bargaining for a reduction in fees in exchange for a reasonable limitation on the right of discharge.[42]

¶ 38 Here, there is no question that CITGO has an understanding of the commercial business world and is a highly sophisticated consumer of legal services. It is admitted that the client's Vice President of Legal Services and General Counsel negotiated the letter agreements. There are no allegations that the terms of the liquidated damages provisions [43] are ambiguous. At a minimum, the firm altered its position to the extent that it equipped an office and provided legal counsel in an out-of-state location. Further, the liquidated damages provisions contain CITGO's express acknowledgment that the firm further changed its position by undertaking certain costs and expenses to meet the demands of the contractual relationship.

¶ 39 We resolve this cause by applying established contract principals, while at the same time showing appropriate deference to the fiduciary nature of the attorney-client relationship and the supervisory role of the courts over members of the bar. Within this legal framework, the unique facts of this case compel the conclusion that the liquidated damages clauses are not prohibited by our

**37.** See note 2, supra.

**38.** *Tillman v. Gazaway,* see note 33, supra.

**39.** *Waggoner v. Johnston,* 1965 OK 192, ¶ 18, 408 P.2d 761.

**40.** *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d 1105 (3rd Cir.1979).

**41.** *State ex rel. Oklahoma Bar Ass'n v. Stutsman,* 1999 OK 62, fn. 14, 990 P.2d 854.

**42.** *McKenzie Const., Inc. v. Maynard,* 758 F.2d 97 (3rd Cir.1985).

**43.** See note 2, supra.

jurisprudence or the Rules of Professional Conduct. The determination of whether the same clauses may constitute prohibited penalty provisions should be guided by the factors announced in *Sun Ridge Investors, Ltd. v. Parker*, 1998 OK 22, 956 P.2d 876.

**CERTIFIED QUESTIONS ANSWERED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., concur in the answer to the first question.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, WATT, TAYLOR, COLBERT, JJ., concur in the answer to the second question.

OPALA, KAUGER, JJ., concur in result in the answer to the second question.

REIF, J. not voting.

OPALA, J., with whom KAUGER, J., joins, concurring in the court's answer to the **first question** and concurring in result in the court's answer to the **second question.**

¶ 1 As affected as today's answer to the **second question** must be by several unknown fact-dependent considerations, it is **incapable of a concrete and precise formulation** without making unacceptable assumptions. The text of the court's answer to the **second question** should hence be accepted with that understanding.